UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JONATHAN SAUL, individually and on
behalf of all others similarly situated,

           Plaintiff,

    v.

VALNET INC.,

           Defendant.

CASE NO. 1:25-CV-12236-JEK

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VALNET INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), Defendant Valnet

Inc. ("Valnet"), hereby moves to dismiss the Class Action Complaint ("Complaint") of Plaintiff

Jonathan Saul ("Plaintiff") for lack of personal jurisdiction over Valnet and failure to state a

claim upon which relief may be granted. In support of its Motion to Dismiss, Valnet states as

follows:

### I.       **PRELIMINARY STATEMENT**

Plaintiff, on behalf of himself and all other similarly situated individuals, brings this

lawsuit under the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), a 1988 law

intended to prevent "video tape service providers" – like video rental businesses – from

knowingly disclosing their customers' requested or obtained video rental information without

their consent. The plaintiffs' bar "discovered" the VPPA a decade ago and has since launched a

mass campaign targeting all types of legitimate businesses that host any video content on their

websites. This case is merely a part of that trend. Plaintiff claims that he individually and on

behalf of the class is entitled to statutory damages, prejudgment interest, injunctive relief, plus attorneys' fees, expenses, and costs because he created an account and viewed videos on a website operated by Valnet, www.gamerant.com (the "Website"), and his personally identifiable information ("PII") was allegedly disclosed to third parties by Valnet without his consent. Compl. ¶¶ 2, 5. But Plaintiff's claims must be dismissed for three key reasons. *First*, the Massachusetts long-arm statute does not establish jurisdiction over Valnet. *Second*, even if the long-arm statute applied, Plaintiff has failed to demonstrate that this Court can exercise jurisdiction over Valnet consistent with Due Process. *Third*, even in the event Valnet had disclosed any of Plaintiff's PII (which Valnet does not concede), Plaintiff consented to any such alleged disclosure, which is specifically permitted under the VPPA. *See* 18 U.S.C. § 2710(b)(2)(B).

Tellingly, Plaintiff's counsel in this case recently filed a virtually identical complaint targeting Valnet in the Southern District of New York.[1] Once it became clear that Second Circuit law was not particularly favorable to Plaintiff's positions,[2] that case was dropped and this case was filed. Despite Plaintiff's counsel's efforts at forum shopping, Plaintiff cannot establish this Court's personal jurisdiction over Valnet. Merely making a website available anywhere in the world (incidentally including Massachusetts) is insufficient to establish personal jurisdiction

---

[1] *See* S.D.N.Y., Case No. 1:25-cv-03622-LLS. On information and belief, and based on the Complaint's signatures, Plaintiff's counsel in this action serves as local counsel to the firm behind the New York case, Arisohn LLC.

[2] *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. 2025) (holding that a unique string of computer code transmitted by service to third party did not constitute "personally identifiable information" under VPPA). As the Second Circuit later recognized, "Solomon effectively shut the door for Pixel-based VPPA claims." *See Hughes v. Nat'l Football League*, No. 24-2656, 2025 WL 1720295, at *2 (2d Cir. June 20, 2025).

under either the Massachusetts long-arm statute or the "minimum contacts" test. Valnet has no offices in the state, has no registered agent in the state, and does not target Massachusetts in any particular or unique manner. Plaintiff has no compelling basis in fact or law to support jurisdiction in Massachusetts.

Separately, by creating an account on the Website, Plaintiff necessarily consented to Valnet's privacy policies, which covered the alleged conduct in this case. Thus, under Federal Rule of Civil Procedure 12(b)(6), Plaintiff fails to state a claim because he consented to any alleged data transfers.

## II.     REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, Valnet respectfully requests that the Court take judicial notice of screenshots of relevant webpages from Valnet's Website, specifically its account creation webpage, and its policies related to data sharing and tracking technologies in effect and publicly available on Valnet's Website when Plaintiff created his account in November 2024. Compl. ¶ 5. These documents are attached as Exhibits A-D to the Declaration of Yury Smagorinsky ("Decl.").[3]

Under Federal Rule of Evidence 201, courts may take judicial notice of facts "if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is "not subject to reasonable dispute." *Doe v. Std. Ins. Co.*, 852 F.3d 118, 124 (1st Cir. 2017) (taking judicial

---

[3] Valnet's policies have been revised since November 2024, when Plaintiff allegedly created his account. Valnet seeks judicial notice of its publically available policies as they appeared in November 2024.

notice of relevant information contained on websites); *Gent v. Cuna Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of "relevant facts provided on the website, which are 'not subject to reasonable dispute'"); *Local No. 8 IBEW Ret. Plan & Trust v. Vertex Pharm. Inc.*, 838 F.3d 76, 78 n.3 (1st Cir. 2016) (considering at pleading stage the text of a document proffered by the defendant); *Mazzarino v. Massachusetts State Lottery Comm'n*, 616 F. Supp. 3d 118, 125–26 (D. Mass. 2022) (taking judicial notice of terms and conditions on website); *Piper v. Talbots, Inc.*, 507 F. Supp. 3d 339, 343 (D. Mass. 2020) (taking judicial notice that "information contained in printouts is included on [ ] websites").

Here, Plaintiff points to selective content from Valnet's Website to form the basis of his allegations, specifically that he never consented to the disclosure of his PII. *See*, *e.g.*, Compl. ¶¶ 5 ("Unbeknownst to Plaintiff, and without his consent, Defendant shared Plaintiff's video watching activity and his PII with Google through its use of Google Tag and Google Analytics."), 20, 21, 40. Therefore, the account creation page and the policies related to data sharing and tracking technologies are critical to the issue of Plaintiff's consent to any alleged disclosure of information. Accordingly, and to ensure the Court has a complete understanding of a user's experience on the Website, Valnet seeks to introduce relevant portions of its Website that were publically available when Plaintiff allegedly created his account. Valnet respectfully requests that the Court take judicial notice of Decl. Exs. A-D.

### III.   FACTUAL AND PROCEDURAL BACKGROUND

Accepting as true for purposes of this Motion all factual allegations contained in the Complaint, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007), the relevant facts are as follows.

**A.**     **Valnet And Its Website**

Valnet is a digital media company that owns and operates a portfolio of popular entertainment and lifestyle websites.  One of its flagship sites is Game Rant (the Website), which is dedicated to covering video game-related news, interviews, and reviews.  The Website offers a "sign-in function" that allows users to create an account on the Website.  Compl. ¶ 20.  Plaintiff claims an account provides users with "Unlimited Access" and "increase[s] Defendant's potential to urge accountholders to visit gamerant.com and watch videos on it, making Defendant's relationship with them distinct from its relationship with other casual video-watchers on gamerant.com."  *Id.* ¶ 21.  While the Website is generally available, including to users in Massachusetts, Valnet does not maintain any offices in Massachusetts, have any employees in Massachusetts, specifically target Massachusetts users in any unique manner, or avail itself of the Massachusetts market in any unique manner.  Decl. ¶ 3.

**B.**     **Plaintiff And His Account With The Website**

Plaintiff is a resident of Massachusetts and has had an account on the Website "since approximately November 2024."  Compl. ¶ 5.  Since that time, Plaintiff alleges, "he has viewed numerous videos on the Website."  *Id.*  Plaintiff does not specify the nature of the videos he watched.  Nor does he explain whether they contained pre-recorded video content.

Plaintiff alleges that neither he nor the purported class members "provide[d] Defendant with any form of consent, written or otherwise, to disclose their [personally identifying information] or video viewing activity to third parties."  *Id.* ¶ 40.

**C.**      <u>**Account Creation And Disclosure Mechanism**</u>

To create an account on the Website, users are required to accept Valnet's Privacy Policy and Terms of Use. Decl. ¶¶ 4-7. First, as illustrated in the Complaint, once users press the "Sign In Now" button, they are redirected to the sign-in page, which provides the option to "Log in" or "Create an account." Compl. ¶ 20. The Complaint, however, omits the subsequent steps of the account creation process – specifically, that when a user chooses to proceed with account creation, they are presented with two options: to sign in with a Google account or sign in with an email address. *See below* in Fig. 1 and Decl. ¶ 4, Ex. A.



Fig. 1

Regardless of whether the user chooses to sign in using their Google account or log in with an email address, they are then presented with a second screen that includes links to Valnet's Privacy Policy and Terms of Use. Decl. ¶ 5. As illustrated in Fig. 2, when users choose to sign in using their Google account, they are presented with a pop-up webpage that offers to choose which Google account the user prefers to use to log in and links to Valnet's Privacy Policy and Terms of Use. Decl. ¶ 6, Ex. B ("Before using this app, you can review Screen

Rant's privacy policy and terms of service.").  Similarly, when users choose to create an account using their email, they are likewise directed to a similar screen that requires them to accept Valnet's Privacy Policy and Terms of Use.  *See* Fig. 3; Decl. ¶ 7, Ex. C.



Fig. 2



Fig. 3

Valnet's Privacy Policy is dated May 6, 2024 and therefore was in effect when Plaintiff

created his account with the Website in November 2024.  Compl. ¶ 5; *see also* Decl. ¶¶ 9-10.

Valnet's Privacy Policy contains the following disclosures about sharing data with advertising

partners and the use of the cookies and pixel tags:

> **COOKIES**
> A cookie is a piece of data stored on the user's computer tied to
> information about the user. We and some of our business partners (for
> example, advertisers) use cookies on our Sites. These cookies track usage
> of our Sites for security, analytics and targeted advertising purposes.
> We use the following type of cookies:
>
> […] **Analytics and Performance Cookies**: These cookies help us collect
> statistical and analytical usage to help us analyze your usage of our Sites.
> […]**Advertising and Targeted Advertising Cookies**: These cookies
> track your browsing habits and location to provide you with advertising in
> line with your interests. Please see our "Advertisers" section below for
> further details.
> **Shared ID Cookies**: These cookies store a unique user id in the first party
> domain and is accessible to our ad partners. This simple ID can be utilized
> to improve user matching, especially for delivering ads to iOS and MacOS
> browsers. Users can opt out of the Shared ID tracking cookie by clicking
> here.
>
> **PIXEL TAGS**
> We use pixel tags, which are small graphic files that allow us and our
> trusted third-party partners to track your usage of our Sites and collect
> usage data, including the number of pages you visit, the time you spend on
> each page, what you click on next, and other information about your visit
> to the Sites.
>
> **ADVERTISING PARTNERS**
> […] We use the following advertisers:
> - Google Ad Exchange: https://policies.google.com/privacy
> - Google Ad Sense: https://policies.google.com/privacy

Decl. ¶ 11, Ex. D (Privacy Policy).

**D.     The VPPA And Plaintiff's Allegations**

The VPPA prohibits "video tape service providers" from "knowingly disclos[ing], to any person, [PII] concerning any consumer of such provider" without the consumer's "informed, written consent." VPPA § 2710(b); *see also* Compl. ¶ 11. Plaintiff alleges Valnet violated the VPPA by disclosing to Google his and the class members' PII. Compl. ¶ 37. According to the Complaint, the alleged disclosures occurred through Valnet's implementation of Google Tag and Google Analytics "to track what videos its users watch, and to then send that data to Google along with their PII." *Id.* ¶ 3.

**E.     Google Tag And Google Analytics**

Plaintiff describes Google Tag as a technology that "lets you send data from your website to linked Google product destinations, to help you measure the effectiveness of your website and ads." Compl. ¶ 14 (internal citations omitted). To help businesses manage their websites, "the Google Analytics code […] collects information on what users do on that website, including the specific URLs that they visit and associated metadata," which Plaintiff defines as "Event Data." *Id.* ¶¶ 16, 23. Plaintiff further explains, "websites hosting the Google Tag and/or Google Analytics send Google information from various Google cookies, including the Google SID cookie and the Google HSID cookie which 'contain *digitally signed and encrypted records* of a user's Google Account ID.'" *Id.* ¶¶ 17, 26 (emphasis added). Google then "combines the Event Data and PII to create profiles for each user." *Id.* ¶ 18. In support of these claims, the Complaint includes two screenshots purporting to show "the code for the Google Tag and Google Analytics on each page of gamerant.com" that contains data entries like whether "the page hosts a video, the type of video, the name of the video, and the user's IP address." *Id.* ¶ 24. The Complaint

also contains a screenshot of the "code for at least 30 different third-party cookies from Google and DoubleClick." *Id.* ¶ 25. However, the Complaint contains no allegations suggesting these cookies are relevant to Plaintiff's claims.

## IV.     ARGUMENT

### A.     Plaintiff Must Establish Personal Jurisdiction For The Court To Hear And Decide This Case, But Cannot Do So.

In order to hear and decide a case, "a court must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002). The burden of proving that the Court has personal jurisdiction over a defendant rests with the plaintiff. *Id.* And the plaintiff "may not rely on unsupported allegations in the pleadings to make a prima facie showing of personal jurisdiction." *Boit*, 967 F.2d at 675. In setting forth the prima facie case, the plaintiff "cannot rest upon mere averments, but must adduce competent evidence of specific facts." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145 (1st Cir. 1995). If a plaintiff fails to do so, the complaint should be dismissed for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

Because this Court's exercise of specific personal jurisdiction[4] over Valnet does not comport with the Massachusetts long-arm statute or the Due Process Clause of the United States Constitution, the Complaint should be dismissed.

---

[4] Plaintiff's Complaint does not attempt to plead facts supporting general jurisdiction over Valnet. This makes sense as the Commonwealth is not Valnet's "place of incorporation [or] its principal place of business." *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). Valnet, therefore, focuses on the specific jurisdiction inquiry.

1.      **Plaintiff Cannot Establish Jurisdiction Under The Massachusetts Long-Arm Statute**

With respect to specific jurisdiction, Massachusetts's long-arm statute, M.G.L. c. 223A, § 3, provides that "[a] court may exercise personal jurisdiction over a person … as to a cause of action in law or equity arising from the person's" one or more specific acts or omissions, as enumerated in the statute. The statute enumerates eight grounds on which a nonresident defendant may be subjected to personal jurisdiction by a court of the Commonwealth. *See* M.G.L. c. 223A, § 3. None are applicable here.

Presumably – though contained nowhere in his pleadings – Plaintiff's jurisdictional argument rests on the long-arm statute's provision that a Massachusetts court may exercise personal jurisdiction over a cause of action arising from a nonresident person's business transactions within the Commonwealth. M.G.L. c. 223A, § 3(a). But the Complaint does not establish grounds for jurisdiction on this ground because it does not allege that Valnet "transacts business" within the Commonwealth as courts have defined the phrase in analyzing M.G.L. c. 223A, § 3(a).

"[T]he law in Massachusetts is well-established that isolated transactions unaccompanied by 'purposeful intent' on the part of [a] defendant[ ] and having only a 'slight effect on the commerce of the Commonwealth' are not enough to support jurisdiction under subsection (a) of the long-arm statute." *Sun Life Assurance Co. of Canada v. Sun Bancorp, Inc.*, 946 F. Supp. 2d 182, 188 (D. Mass. 2012) (additional quotations and citation omitted). Here, the record establishes that Valnet has no offices or employees in Massachusetts. *See* Decl. ¶ 2. The record also fails to establish that Valnet carries out any advertising or marketing efforts that specifically

target Massachusetts residents as opposed to other states.  *See Power v. Connectweb Techs., Inc.*, 648 F. Supp. 3d 321, 332 (D. Mass. 2023).  Moreover, Plaintiff has not established that Valnet takes specific steps to solicit business in Massachusetts.  Plaintiff's conclusory allegations are insufficient to establish that Valnet acted with a purposeful intent to transact business in this forum.  *See Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 257 (1st Cir. 2022) (explaining that under the prima facie approach to personal jurisdiction, the plaintiff "may not rely on the mere allegations of [his] complaint, but must point to specific facts in the record that support those allegations").  Further, Plaintiff has failed to allege any facts to establish Valnet's intent to enter specifically into Massachusetts, rather than the mere availability of the Website in the Commonwealth.  Thus, Plaintiff has not shown that the long-arm statute provides a basis for personal jurisdiction over Valnet in this case.

### 2.    Plaintiff Cannot Establish Jurisdiction Consistent With The Due Process Clause Of The Constitution

Plaintiff must prove three things to establish that the exercise of specific jurisdiction would satisfy Constitutional Due Process requirements.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) ("The plaintiff's claim must arise out of, or relate to, the defendant's forum contacts").  Plaintiff must demonstrate that (1) its claim arises out of or relates to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in the forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable." *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st

Cir. 2018).  "When, as here, the contacts in question are related to a website that is available in the forum but that is operated outside of it, the Court's focus should begin with the purposeful availment prong."  *Frawley v. Nexstar Media Grp., Inc.*, 2023 WL 6065768, at *5 (D. Mass. Sept. 18, 2023).  Plaintiff cannot establish specific jurisdiction under any of these prongs.

a.    **Plaintiff's Claims Are Not Sufficiently Related To Valnet's Contacts With Massachusetts**

To satisfy the relatedness prong, Plaintiff must show that the "litigation arises out of, or directly relates to, the defendant's in-state activities."  *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d, 284, 288 (1st Cir. 1999).  In essence, the plaintiff must establish that the "cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)."  *Mass. Sch. of Law v. American Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998).  Here, while Plaintiff accessed the Website in Massachusetts, the only connection to Massachusetts in this matter is Plaintiff's unilateral activities, not Defendant's contacts with the Commonwealth.  *See Riley v. Zeus Networks, LLC*, 2025 WL 2793753, at *3 (D. Mass. Sept. 30, 2025) ("The interaction with the plaintiff was based on the plaintiff's unilateral decision to access the defendant's services.  Her PII was not disclosed because the defendant deliberately targeted the forum, but because the plaintiff herself downloaded and used the defendant's app.").  Plaintiff's Complaint fails to allege any facts to satisfy the relatedness prong.  The Court should decline to exercise jurisdiction on this basis alone.

### b. Plaintiff Cannot Demonstrate That Valnet "Purposefully Availed" Itself Of The Privilege Of Conducting Qualifying Activities In Massachusetts

It is Plaintiff's burden to demonstrate that Valnet has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Knox v. MetalForming, Inc.*, 914 F.3d 685, 690 (1st Cir. 2019). The purposeful availment analysis focuses on "two cornerstones: voluntariness and foreseeability." *Riley*, 2025 WL 2793753, at *2. Demonstrating "voluntariness demands that the defendant's contacts with the forum result proximately from its own actions," and not on the unilateral actions of another party. *See Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 96 (1st Cir. 2024) (internal quotation omitted). Demonstrating "foreseeability, meanwhile, demands that 'the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being hailed into court there.'" *Id.* The "First Circuit has made clear that the mere availability of a website in a particular forum—without 'something more'—is insufficient, as 'such a rule would eviscerate the limits on personal jurisdiction over out-of-state defendants.'" *Riley*, 2025 WL 2793753, at *2 (citing *Cossaboon v. Maine Med. Ctr*, 600 F.3d 25, 35 (1st Cir. 2010)). Merely anticipating that a website will receive account sign-ups "from Massachusetts"—"like any other state"—is not enough to establish purposeful availment. *Riley*, 2025 WL 2793753, at *2

*Riley* — a VPPA matter involving the downloading and installation of the defendant's cellular phone app—is on point. In evaluating the purposeful availment prong, the court observed, "there is no indication that the defendant targeted Massachusetts specifically *as opposed to other potential forums*." *Id.* at *3 (emphasis added). The court also noted, "[t]he

products are available to anyone with internet access and/or a smartphone, and the mere availability of the defendant's website and app is insufficient." *Id.* The analysis concludes, "[h]er PII was not disclosed because the defendant deliberately targeted the forum, but because the plaintiff herself downloaded and used the defendant's app." *Id.* The same analysis applies here.

Valnet is not a Massachusetts company, is not registered to do business in Massachusetts and does not have a registered agent in Massachusetts. As in *Riley*, Plaintiff's PII was allegedly disclosed not because Valnet "deliberately targeted the forum, but because the plaintiff [him]self […] used the" Website. *Riley*, 2025 WL 2793753, at *3.

Plaintiff alleges that Valnet "used and disseminated data derived directly from Massachusetts-based users." Compl. ¶ 8. But, even assuming the allegation is true, Plaintiff does not set forth facts that plausibly show that Valnet "***specifically*** targets the forum." *Riley*, 2025 WL 2793753, at *2 (emphasis added). The "contacts which result from" the Website "being generally available online are not sufficient to demonstrate purposeful availment." *See Frawley v. Nexstar Media Grp., Inc.*, 2023 WL 6065768, at *5. Valnet, like countless others, maintains a generally available website that Massachusetts residents may choose to access online. Here, the only connection to Massachusetts is Plaintiff's unilateral online activities. Consequently, Plaintiff's Complaint fails to allege facts sufficient to satisfy the purposeful availment prong. Again, the Court can – and should – decline to exercise jurisdiction based on this basis alone.

       c.      **Plaintiff Cannot Demonstrate That The Exercise Of Jurisdiction Would Be Reasonable**

Like Plaintiff's failure to meet his burden on the first two factors (which are each independently dispositive of the specific jurisdiction inquiry), he cannot establish the Court's jurisdiction based on the "reasonableness" factor either. Five factors are examined which bear on the reasonableness of subjecting non-resident defendants to the authority of a foreign tribunal: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiffs' interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and finally, (5) the common interests of all sovereigns in promoting substantive social policies. *See Burger King Corp.*, 471 U.S. at 477; *Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir. 1995).

On the first factor, the burden of appearing before this court is significant as Valnet would have to expend significant resources adjudicating this matter in Massachusetts as it has no contacts within this forum. Further, Valnet's principal place of business is located in Montreal, Canada. *See* Decl. ¶ 2. A distant forum would create a significant burden on Valnet. As for the second factor, this jurisdiction does not have an interest in presiding over a defendant that has not availed itself of the benefits of Massachusetts. As for the third factor, Valnet does not dispute that Massachusetts would provide the most convenient and effective relief for the Plaintiff, but the due process inquiry focuses on the defendant. The fourth factor weighs in favor of dismissal, as Valnet does not intend to or actively engage in specific targeting of Massachusetts residents. Thus, the resolution of this matter in Massachusetts would not be in the judicial system's interest in obtaining the most effective resolution of the controversy. Lastly, the final factor, the promotion of substantive social policy, does not favor either side. In sum, the "reasonableness" factors do not favor the exercise of personal jurisdiction over Valnet.

Because Plaintiff cannot establish relatedness, purposeful availment, or reasonableness, Plaintiff's claim should be dismissed for lack of jurisdiction.

### 3. Any Request For Leave To Conduct Jurisdictional Discovery Should Be Denied

In the event Plaintiff seeks leave to conduct jurisdictional discovery, such request should be denied. To start, the fact that Plaintiff's counsel brought a very similar case in New York against Valnet earlier this year evidences that Plaintiff's counsel has had ample opportunity to research facts bearing on jurisdiction. Further, Plaintiff has not demonstrated an ability to show anything other than that Valnet maintains a website that is "available to anyone with internet access and/or a smartphone," which is insufficient to show the purposeful availment required for jurisdiction. *Riley*, 2025 WL 2793753, at *3. Lastly, despite being aware of the jurisdictional issues with this case, Plaintiff failed to set forth "facts to the court which show why jurisdiction would be found if discovery were permitted." *See Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 27 (1st Cir. 2007); *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 626 (1st Cir. 2001); *Sport Pro Surfacing, LLC v. Flake*, 2024 WL 4495106, at *4 (D. Mass. Oct. 15, 2024). For these reasons, if requested, jurisdictional discovery should be denied.

### B. Plaintiff's VPPA Claim Is Barred Because Plaintiff Consented To Disclosure Via Google Tag And Google Analytics

Under Rule 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary

to sustain recovery under some actionable legal theory." *Pitta v. Medeiros*, 90 F.4th 11, 17 (1st Cir. 2024) (quoting *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008)). This requires "more than labels and conclusions." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. On a motion to dismiss under Rule 12(b)(6), courts look to "the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice." *MIT Fed. Credit Union v. Cordisco*, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (citing *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)); *Miller v. CitiMortgage, Inc.*, 457 F. Supp. 3d 13, 16 (D. Mass. 2020) (citing *Trans-Spec Truck Serv. v. Caterpillar*, 524 F.3d 315, 321 (1st Cir. 2008)); *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 2015 WL 3751422, at *3 (D. Mass. June 15, 2015).

Plaintiff's claims are barred by his consent to the third-party disclosures alleged in the Complaint, through his acceptance of Valnet's Privacy Policy, which was required when Plaintiff created an account on the Website.[5] The VPPA authorizes disclosure of PII to any person with the consumer's "informed, written consent," "including through an electronic means using the Internet." Such consent must be provided either "at the time the disclosure is sought" or "in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner." 18 U.S.C. § 2710(b)(2)(B). Here, Valnet's Privacy Policy— which must be accepted by all users to create an account—clearly informs users that their information will be shared with third parties. Decl. ¶¶ 11-12, Ex. D (Privacy Policy). Valnet's

---

[5] Valnet's Privacy Policy is dated May 6, 2024, and was therefore in effect when Plaintiff created his account with the website in November 2024. Compl. ¶ 5; *see also* Decl. ¶ 10.

Privacy Policy, in effect when Plaintiff created his account on the Website, unambiguously stated that cookies used on the Website include "Targeted Advertising Cookies," "Shared ID Cookies" and Pixel Tags. Valnet's Privacy Policy also disclosed a list of the advertising partners that included Google. The "cookies" section of Valnet's Privacy Policy also explicitly disclosed that Shared ID Cookies "store a unique user id in the first party domain and is accessible to our ad partners." Decl. ¶ 11, Ex. D (Privacy Policy).

Since Plaintiff claims he created an account with the Website (Compl. ¶ 5) – he necessarily accepted the Privacy Policy and was on notice of Valnet's privacy settings.[6] *See Lakes v. Ubisoft, Inc.*, 2025 WL 1036639, at *8-9 (N.D. Cal. Apr. 2, 2025), appeal filed, No. 25-2857 (9th Cir. May 2, 2025) (consent under the VPPA established by a plaintiff's agreement to the website's privacy policy). In *Ubisoft*, like here, the applicable privacy policy explained that the website uses cookies that may share information about the activity of website visitors with third parties. *Id.* at *4.

As in *Ubisoft*, when Plaintiff created an account in November 2024, he agreed to the Privacy Policy referenced and linked on the account creation page. Decl. ¶¶ 6-8. At the time,

_____

[6] While Plaintiff may try to rely on *Adams v. America's Test Kitchen* to argue that consideration of consent is inappropriate on a motion to dismiss, *Adams* is distinguishable. *Adams v. America's Test Kitchen, LP*, 680 F. Supp. 3d 31 (D. Mass. 2023) (refusing to consider consent in a motion to dismiss where the compliant alleged the provided consent was not in compliance with the VPPA). Here, unlike in *Adams*, Plaintiff has not alleged that the consent provided was insufficient; instead, he asserts that he created an account on the Valnet website and that his data was shared without consent. (Compl. ¶¶ 2, 4, 5, and 40). Since account creation requires acceptance of Valnet's privacy policy, Valnet's privacy policy and account creation screenshots merely supplement facts fairly incorporated into the pleadings. *Adams*, 680 F. Supp. 3d 31 at 43–44 ("Consent is generally an affirmative defense and may be considered on a motion to dismiss only when the facts establishing the defense are clear from the face of the complaint as supplemented by matters fairly incorporated within it and matters susceptible to judicial notice.") (citations omitted).

Valnet's operative Privacy Policy (effective as of May 6, 2024) disclosed that the Website uses "Targeted Advertising Cookies," "Shared ID Cookies" and Pixel Tags and explicitly disclosed that Shared ID Cookies "store a unique user id in the first party domain and is accessible to our ad partners." *Id.*, ¶ 11. Plaintiff's allegations in this Complaint pertain specifically to the use of such Shared ID – Google Account ID. Compl. ¶ 37. These disclosures were distinct and separate from any legal obligations because they were presented on a separate document and page. *See Ubisoft*, 2025 WL 1036639, at *8. Plaintiff's consent was written, because he clicked "continue"/ "next" to create his account. *See* Decl. ¶¶ 6-8, Exs. B. C. Finally, Plaintiff's consent did not exceed two years from the disclosures alleged in the Complaint as Plaintiff alleges he created the account in November 2024. Compl. ¶ 5.

Plaintiff affirmatively proceeded through account creation despite disclosures explaining Valnet's data-sharing practices, and thus consented to data sharing within the meaning of the VPPA. Accordingly, Plaintiff's claim should also be dismissed under Rule 12(b)(6) on this basis.

## V.     CONCLUSION

For the foregoing reasons, Valnet respectfully requests that the Court dismiss Plaintiff's claims with prejudice, without leave to amend and without leave to conduct any jurisdictional discovery.

DATED:  November 10, 2025

Respectfully submitted,

Mitchell Silberberg & Knupp LLP

By: */s/Lucy Holmes Plovnick*
Lucy Holmes Plovnick (BBO# 654918)
lhp@msk.com
Mitchell Silberberg & Knupp LLP
1818 N Street NW, 7th Floor
Washington, DC 20036
Telephone: (202) 355-7900
Facsimile: (202) 355-7888

*Attorneys for Defendant Valnet Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2025, I electronically filed the foregoing

Memorandum in Support of Motion to Dismiss with the Clerk of Court using the CM/ECF

system, which shall send notification of such filing to the following:

James J. Reardon, Jr. (BBO # 566161)
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
E-mail: james.reardon@reardonscanlon.com

Joshua D. Arisohn (to be admitted *pro hac vice*)
94 Blakeslee Rd.
Litchfield, CT 06759
Telephone: (917) 656-0569
Email: josh@arisohnllc.com

/s/Lucy Holmes Plovnick