| | |
|---|---|
| JONATHAN SAUL, individually and on behalf of all others similarly situated, | Case No. 1:25-cv-12236-JEK |
| Plaintiff, | |
| v. | |
| VALNET INC., | |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .......................................................................................................................2

I.      THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT......................2

        A.      The Massachusetts Long-Arm Statute Creates Personal Jurisdiction.....................2

        B.      Exercising Personal Jurisdiction Over Defendant Pursuant to the
              Massachusetts Long-Arm Statute Comports with the Fourteenth
              Amendment's Due Process Clause ..........................................................................6

        C.      Personal Jurisdiction Exists Under Rule 4(k)(2) ..................................................10

        D.      Jurisdictional Discovery Is Warranted ..................................................................13

II.     PLAINTIFF DID NOT CONSENT TO DEFENDANT DISCLOSING HIS VIDEO-
        VIEWING BEHAVIOR .......................................................................................14

        A.      Adjudication of Defendant's Affirmative Defense of Consent Is Not
              Appropriate on a Motion to Dismiss......................................................................14

        B.      Defendant's Privacy Policy Does Not Constitute Consent Under the VPPA........17

**Cases**

*In re Fairfield Sentry Ltd.*,
    671 B.R. 404 (Bankr. S.D.N.Y. 2025) ................................................................. 12

*Dig. Equip. Corp. v. AltaVista Tech., Inc.*,
    960 F. Supp. 456 (D. Mass. 1997) ...................................................................... 6

*Fan v. NBA Props. Inc.*,
    2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) .................................................. 16

*Access Now, Inc. v. Sportswear, Inc.*,
    298 F. Supp. 3d 296 (D. Mass. 2018) .............................................................. 4, 7

*Adams v. Am.'s Test Kitchen, LP*,
    680 F. Supp. 3d 31 (D. Mass. 2023) ............................................................. 14, 16

*Ade v. Viki, Inc.*,
    2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) .................................................. 15

*Adelson v. Hananel*,
    510 F.3d 43 (1st Cir. 2007) ............................................................................... 10

*Advent Techs., Inc. v. Kaye*,
    2024 WL 1885936 (D. Mass. Apr. 29, 2024) ..................................................... 5

*Allen v. Novant Health, Inc.*,
    2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) .................................................... 5

*Astro-Med, Inc. v. Nihon Kohden Am., Inc.*,
    591 F.3d 1 (1st Cir. 2009) ............................................................................... 7, 9

*Barnes v. Merck & Co., Inc.*,
    648 F. Supp. 3d 283 (D. Mass. 2023). ............................................................... 5

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*,
    825 F.3d 28 (1st Cir. 2016) ................................................................................. 3

*Bermudez v. Newlong Mach. Works, Ltd.*,
    98 F. Supp. 3d 47 (D. Mass. 2015) ................................................................... 10

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
    582 U.S. 255 (2017) ......................................................................................... 11

*C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*,
  771 F.3d 59 (1st Cir. 2014) ................................................................................. 8

*Calder v. Jones*,
  465 U.S. 783 (1984) ........................................................................................ 8

*Cappello v. Walmart Inc.*,
  2019 WL 11687705 (N.D. Cal. Apr. 5, 2019 .................................................. 17, 19

*Ching-Yi Lin v. TipRanks, Ltd.*,
  2019 WL 6211246 (D. Mass. Nov. 21, 2019) ................................................. 6-7

*Conning v. Halpern*,
  2019 WL 2514730 (D. Mass. June 18, 2019) ................................................. 7, 10

*Cossart v. United Excel Corp.*,
  804 F.3d 13 (1st Cir. 2015) ............................................................................ 2, 7-8

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
  290 F.3d 42 (1st Cir. 2002) ............................................................................ 10

*Edwards v. MUBI, Inc.*,
  773 F. Supp. 3d 868 (N.D. Cal. 2025) ........................................................... 16

*Fan v. NBA Props. Inc.*,
  2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ................................................ 19

*Feldman v. Star Trib. Media Co. LLC*,
  659 F. Supp. 3d 1006 (D. Minn. 2023) .......................................................... 15, 19

*Fiske v. Sandvik Mining*,
  540 F. Supp. 2d 250 (D. Mass. 2008) ........................................................... 5

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*,
  905 F.3d 597 (9th Cir. 2018) .......................................................................... 8

*Fudge v. Delta Air Lines, Inc.*,
  753 F. Supp. 3d 987 (C.D. Cal. 2024) ........................................................... 4

*Fuld v. Palestine Liberation Org.*,
  606 U.S. 1 (2025) ........................................................................................... 11-13

*Garcia v. Bandai Namco Ent. Am. Inc.*,
  2025 WL 2451033 (C.D. Cal. Aug. 7, 2025) .................................................. 14

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*,
326 U.S. 310 (1945) ................................................................................................... 6

*J. McIntyre Mach., Ltd. v. Nicastro*,
564 U.S. 873 (2011) ..................................................................................................... 8

*Jackson v. Fandom, Inc.*,
2023 WL 4670285 (N.D. Cal. July 20, 2023) ........................................................ 17

*Keds Corp. v. Renee Int'l Trading Corp.*,
888 F.2d 215 (1st Cir. 1989) ...................................................................................... 5

*Kim v. Veglas*,
607 F. Supp. 2d 286 (D. Mass. 2009) ....................................................................... 9

*KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*,
2021 WL 2982866 (D. Mass. July 15, 2021) ............................................................ 8

*Lee v. Plex, Inc.*,
773 F. Supp. 3d 755 (N.D. Cal. 2025) .............................................................. 17, 19

*Licht v. Binance Holdings Ltd.*,
2025 WL 625303 (D. Mass. Feb. 5, 2025). ............................................................ 11

*Monsarrat v. Newman*,
28 F.4th 314 (1st Cir. 2022) .................................................................................... 14

*Motus, LLC v. CarData Consultants, Inc.*,
23 F.4th 115 (1st Cir. 2022) ...................................................................................... 8

*Mullane v. Breaking Media, Inc.*,
2019 WL 5588961 (D. Mass. Aug. 13, 2019) .......................................................... 7

*Murphy v. Erwin-Wasey, Inc.*,
460 F.2d 661 (1st Cir. 1972) ...................................................................................... 5

*Nguyen v. Elsevier Inc.*,
2025 WL 2901059 (N.D. Cal. Oct. 7, 2025) ...................................................... 15-16

*Noonan v. Winston Co.*,
135 F.3d 85 (1st Cir. 1998) ........................................................................................ 5

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*,
757 F.2d 1058 (9th Cir. 1985) ................................................................................... 8

*Pileggi v. Washington Newspaper Publ'g Co., LLC*,
    2024 WL 324121 (D.D.C. Jan. 29, 2024) ............................................. 20

*Plixer Int'l, Inc. v. Scrutinizer GmbH*,
    905 F.3d 1 (1st Cir. 2018) ............................................................. 11, 13

*Plotsker v. Envato Pty Ltd.*,
    2025 WL 2481422 (C.D. Cal. Aug. 26, 2025) ..................................... 18

*Pritzker v. Yari*,
    42 F.3d 53 (1st Cir. 1994) ................................................................. 7

*Sawtelle v. Farrell*,
    70 F.3d 1381 (1st Cir. 1995) .............................................................. 9

*Sunview Condo. Ass'n v. Flexel Int'l, Ltd.*,
    116 F.3d 962 (1st Cir. 1997) ............................................................ 14

*Thornton v. Mindvalley, Inc.*,
    2025 WL 877714 (N.D. Cal. Feb. 14, 2025) ....................................... 15

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
    960 F.2d 1080 (1st Cir. 1992) ......................................................... 2-4

*United States v. Swiss Am. Bank*,
    274 F.3d 610 (1st Cir. 2001) ...................................................... 11, 14

*Williams v. Pac. Sunwear of California LLC*,
    2024 WL 4626541 (D. Ariz. Oct. 30, 2024) ........................................ 5

*Zamzam Telecard, Inc. v. N.J.'s Best Phonecards*,
    514 F. Supp. 2d 136 (D. Mass. 2007) ................................................. 4

## **Statutes**

18 U.S.C. § 2710(a)(3) ........................................................................... 18

18 U.S.C. § 2710(b)(2)(B) ......................................................... 2, 18, 20

Mass. Gen. Laws ch. 223A, § 3(a), ........................................................ 2

Mass. Gen. Laws ch. 223A, § 3(c) ......................................................... 4

Mass. Gen. Laws ch. 223A, § 3(d) ......................................................... 5

## Rules

Fed. R. Civ. P. 4(k)(2)....................................................................................................... 1, 10, 13

## INTRODUCTION

Plaintiff Jonathan Saul ("Plaintiff") has filed a straightforward Complaint alleging that Defendant Valnet Inc. ("Defendant" or "Valnet") violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), by integrating third-party tracking code into its website gamerant.com (the "Website"). Specifically, Plaintiff alleges that, in violation of the VPPA, Defendant integrated Google Tag and Google Analytics into the Website, which resulted in Defendant disclosing his personally identifiable information ("PII") and video-watching information to Google.

Defendant has no compelling defense to Plaintiff's claim on the merits. Instead, it argues that the Court cannot exercise personal jurisdiction over it. That is incorrect. Multiple sections of the Massachusetts long-arm statute apply here because not only does Defendant transact business within the Commonwealth, but its actions from both within and without Massachusetts caused a tortious injury to Plaintiff here. This conduct satisfies the Fourteenth Amendment's due process clause because Plaintiff's claim arises out of Defendant's activities in Massachusetts, Defendant's commission of an intentional tort in Massachusetts satisfies the purposeful availment prong and there is nothing unreasonable about adjudicating that claim in this forum. In addition, personal jurisdiction also exists under Fed. R. Civ. P. 4(k)(2) because this case arises under federal law, Defendant is not subject to general jurisdiction in any other state, and this Court's exercise of personal jurisdiction would comport with the "flexible" due process inquiry under the Fifth Amendment.

Defendant's only other argument is that the Court should dismiss this case because Plaintiff supposedly consented to Valnet disclosing his video-related data to Google. Courts routinely decline to address this kind of fact-intensive affirmative defense at the pleadings stage.

1

Regardless, the Privacy Policy provides no safe harbor because it does not disclose that Defendant would share video-related data with third parties. In addition, the Privacy Policy fails to comply with the specific requirements for consent expressly set out in the VPPA, such as that any consent be provided "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b)(2)(B)(i).

## ARGUMENT

I. **THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT**

A. **The Massachusetts Long-Arm Statute Creates Personal Jurisdiction**

Defendant argues that Plaintiff fails to "establish grounds for [personal] jurisdiction" based on Section (a) of the Massachusetts long-arm statute because it does not "transact business" within the Commonwealth. MTD at 11. That is incorrect. Defendant's business dealings in Massachusetts are substantial. In addition, Defendant entirely ignores that the long-arm statute also provides for personal jurisdiction under Section (c) because it caused a tortious injury through its acts in the Commonwealth, and under Section (d) because it caused a tortious injury in Massachusetts from outside of the Commonwealth.

Under the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3(a), "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth . . . ." The definition of "transacting any business" is interpreted broadly under Massachusetts law. *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1087 (1st Cir. 1992) (collecting federal and state cases interpreting the long-arm statute and determining that the phrase "transacting any business" is "regularly construed . . . in a generous manner"). To determine whether a claim arises from a defendant's "transacting business," a court looks to whether the transacted business was a but-for cause of the harm

alleged in the claim. *Cossart v. United Excel Corp.*, 804 F.3d 13, 18 (1st Cir. 2015); *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1087 (1st Cir. 1992) (holding that a defendant need not have a physical presence in the forum and stating that the test "focuses instead upon whether the defendant attempted to participate in the commonwealth's economic life"). "This standard is not especially rigorous" and may be satisfied by mere "transitory contact with the forum." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 n.3 (1st Cir. 2016) (internal citation and quotation marks omitted).

Defendant argues that it does not "transact[] any business" in Massachusetts because it has no offices or employees here and does not advertise here. But the Declaration of Yury Smagorinsky, Defendant's General Counsel and Vice President, Legal Affairs, as well as Defendant's own website, demonstrate that Valnet's business dealings in the Commonwealth are substantial. Mr. Smagorinsky states that "[t]otal views on the Website in 2024 from Massachusetts users were approximately 0.2% of all website views across Valnet websites." Smagorinsky Decl., (ECF No. 7-1), ¶ 3. Despite this being an apples-to-oranges comparison (Defendant operates dozens of other websites), this number reveals significant dealings in the Commonwealth. According to Defendant, its websites get over five billion monthly ad impressions, meaning over 60 billion per year. Arisohn Decl., Ex. A. Putting that together with Mr. Smagorinsky's declaration, that means that Defendant gets over 12 million ad impressions or website views from Massachusetts on gamerant.com alone, which generate tens or hundreds of thousands of dollars in ad revenue. When factoring in all of Defendant's other websites, its business dealings in Massachusetts are likely more than ten times that amount.

This evidence is more than sufficient to support a finding that Defendant transacts

business in the Commonwealth for purposes of the long-arm statute. Defendant has routinely "participate[d] in the commonwealth's economic life." *United Elec.*, 960 F.2d at 1087. And that participation was a but-for cause of Plaintiff's injury; but-for Defendant providing its services to Massachusetts consumers, offering them accounts, and causing their Massachusetts-based devices to send personal data to Google, Plaintiff's privacy rights would not have been violated. *Zamzam Telecard, Inc. v. N.J.'s Best Phonecards*, 514 F. Supp. 2d 136, 138 (D. Mass. 2007) (The relevant inquiry is "whether the defendant's contacts with the Commonwealth constitute the 'first step in a train of events' that results in injury to the plaintiff."). And, notably, while Defendant argues that its activity in Massachusetts is only a small part of its business, it is not insignificant. *See, e.g.*, *Access Now, Inc. v. Sportswear, Inc.*, 298 F. Supp. 3d 296, 301 (D. Mass. 2018) (holding that defendant who generated just 3.78% of its annual revenue from online sales in the Commonwealth "transacted business in the forum").

In addition, Section (c) of the Massachusetts long-arm statute permits a court to exercise personal jurisdiction over a defendant that causes "tortious injury by an act or omission in this commonwealth . . . ." Mass. Gen. Laws ch. 223A, § 3(c). Here, by violating Plaintiff's privacy interests embedded in the VPPA, Defendant caused a tortious injury through its actions in Massachusetts. Specifically, by including the Google Tag and Google Analytics on gamerant.com, Defendant caused Plaintiff's computer located in Massachusetts to send Google Page View data, including the URL of each video page that he visited, as well other "various pieces of metadata, including whether that page hosts a video, the title of the video and user's IP address," and his Google Account ID. Compl. ¶¶ 24-26. Defendant caused that disclosure to take place in Massachusetts where Plaintiff's computer was located. *Fudge v. Delta Air Lines, Inc.*, 753 F. Supp. 3d 987, 992 (C.D. Cal. 2024) (denying defendant's motion to dismiss under

Rule 12(b)(2) because defendant used the Facebook Tracking Pixel to disseminate plaintiffs' information from their devices in California); *Allen v. Novant Health, Inc.*, 2023 WL 5486240, at *1 (M.D.N.C. Aug. 24, 2023) (for claims based upon alleged data breaches or unlawful disclosure of information to third parties, the injury occurs "when the data is stolen"); *Williams v. Pac. Sunwear of California LLC*, 2024 WL 4626541, at *6 (D. Ariz. Oct. 30, 2024) ("As a matter of common sense, the intentional use of spyware on an unwitting victim's computer must be deemed a tort that occurs inside the forum where the victim is located."); *Advent Techs., Inc. v. Kaye*, 2024 WL 1885936, at *7 (D. Mass. Apr. 29, 2024) ("Subsection 3(c) is met when intentional tortious misconduct (but not negligent conduct) results in an injury in Massachusetts."); *Murphy v. Erwin-Wasey, Inc.,* 460 F.2d 661 (1st Cir. 1972) (when a defendant has committed an intentional tort, "he has for jurisdictional purposes, acted within that state").

In addition, Section (d) of the Massachusetts long-arm statute allows for the exercise of personal jurisdiction when a defendant causes a "tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . ." "Section 3(d) is to be construed 'extremely broadly.'" *Fiske v. Sandvik Mining*, 540 F. Supp. 2d 250, 255 (D. Mass. 2008) (quoting *Noonan v. Winston Co.*, 135 F.3d 85, 92 (1st Cir. 1998)). Further, the First Circuit has held that the test for determining whether revenue is "substantial," within the meaning of the long-arm statute, is lenient, does not require that a certain absolute sales threshold or percentage of sales be met, and that "[t]he sale of 6000 pairs of shoes for $15,000 easily meets this requirement." *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 219 (1st Cir. 1989).

Here, Section (d) is satisfied because "[t]he threshold requirement of § 3(d) is that the

defendants' out-of-state act caused the plaintiff's in-state harm." *Barnes v. Merck & Co., Inc.*, 648 F. Supp. 3d 283, 289 (D. Mass. 2023).  Plaintiff, a Massachusetts resident, sustained an injury to his statutorily protected privacy rights here in Massachusetts.  In addition, Defendant's maintenance of a website "that is continuously available to Massachusetts residents constitutes a regular solicitation of business in Massachusetts." *Ching-Yi Lin*, 2019 WL 6211246, at *3 n.3; *Dig. Equip. Corp. v. AltaVista Tech., Inc.*, 960 F. Supp. 456, 467 (D. Mass. 1997) ("ATI's Web-site, generally accessible twenty-four hours a day and seven days a week to all Massachusetts residents who can access the Web, plainly solicits business in Massachusetts.  It also constitutes continuing contacts with this state insofar as ATI sells advertising space and software through the Web site to citizens of Massachusetts.").  Moreover, in light of the millions of ad impressions that Defendant receives from Massachusetts every year, it derives substantial revenue here.

> **B.**   **Exercising Personal Jurisdiction Over Defendant Pursuant to the Massachusetts Long-Arm Statute Comports with the Fourteenth Amendment's Due Process Clause**

Defendant argues that even if Plaintiff satisfies one of the sections of the Massachusetts long-arm statute, exercising personal jurisdiction in this case would still violate due process. MTD at 12.  That is incorrect.  Due process is satisfied because Plaintiff's claim arise out of Defendant's contacts with the forum, Defendant has purposefully availed itself to of the privilege of conducting activities here, and exercising personal jurisdiction in this case is reasonable.

This Court may assert specific jurisdiction when a defendant has certain minimum contacts with Massachusetts such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).  When assessing whether the exercise of jurisdiction comports with due process, the court evaluates:

> (1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable.

*Cossart v. United Excel Corp.*, 804 F.3d 13, 20 (1st Cir. 2015).

The relatedness factor depends upon "whether the claim underlying the litigation . . . directly arise[s] out of or relate[s] to, the defendant's forum-state activities." *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 10 (1st Cir. 2009) (internal quotation marks omitted). This inquiry is a "flexible, relaxed standard." *Pritzker v. Yari*, 42 F.3d 53, 60-61 (1st Cir. 1994). Here, Plaintiff's claim directly arises out of Valent's activities in Massachusetts. As set out in the Complaint, Defendant caused Plaintiff's computer located in Massachusetts to send Google his PII and video-related data. In other words, the activity complained of all took place in this forum. *Ching-Yi Lin v. TipRanks, Ltd.*, 2019 WL 6211246, at *4 (D. Mass. Nov. 21, 2019) (relatedness test satisfied where plaintiff's underlying claim arose out of defendant's forum-state activity of publishing its website, which contained allegedly defamatory content, in Massachusetts); *Mullane v. Breaking Media, Inc.*, 2019 WL 5588961, at *9 (D. Mass. Aug. 13, 2019) ("Breaking Media's operation of a website that is accessible in Massachusetts and that posted the article which allegedly caused the plaintiff's in-state injury may be sufficient to satisfy the relatedness prong of the inquiry."); *Access Now, Inc. v. Sportswear, Inc.*, 298 F. Supp. 3d 296, 302 (D. Mass. 2018) (relatedness inquiry satisfied where claim was related to plaintiff's use of a website from within the forum); *see also Conning v. Halpern*, 2019 WL 2514730, at *5 (D. Mass. June 18, 2019) (noting that the "effects test" set out in *Calder v. Jones*, 465 U.S. 783, 789 (1984), "is commonly applied in intentional tort cases where the defendant's allegedly tortious

conduct caused harm in the forum state, although the defendant did not set foot there."); *KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, 2021 WL 2982866, at \*10 (D. Mass. July 15, 2021) (relatedness requirement met where data was intentionally misappropriated from within Massachusetts).

The Court must then determine whether "defendant's in-state contacts [identified in the relatedness inquiry] represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Cossart*, 804 F.3d at 21 (citing *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 66 (1st Cir. 2014)) (internal alterations omitted). Generally, "[t]he commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test]," which includes the purposeful availment inquiry. *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (quoting *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011) (noting that there may be exceptions to the purposeful availment requirement, "for instance, in cases involving an intentional tort"). While Defendant argues that "something more" is required beyond the mere availability of website in a particular forum, the First Circuit has held that this requirement is satisfied when a plaintiff alleges an intentional tort, such as a violation of the VPPA, and the defendant knew "of both the existence of a potential victim and the victim's likely whereabouts." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 126 (1st Cir. 2022).

Here, the purposeful availment inquiry is satisfied because Defendant knew that it was invading the privacy rights of a consumer in Massachusetts. Defendant admits that it "track[s]

and store[s] data" about its users, including their "full name," "billing address," and "[their] location." Smagorinsky Decl., Ex. D (ECF No. 7-5) at 2. Likewise, Plaintiff alleges that "Defendant knowingly disclosed Plaintiff's PII and video viewing activity because it knowingly installed the Google Tag and Google Analytics on the Website." Compl. ¶ 39; *id.* ¶ 8 ("Defendant knew that the disclosure of its users' PII and video viewing activity would injure Massachusetts residents and citizens, deprive them of their statutorily-protected privacy rights, and neutralize Massachusetts citizens' and residents' ability to control access to their PII and video-viewing information via their Massachusetts-managed devices."). In other words, when Defendant violated the VPPA by intentionally disclosing Plaintiff's PII and video-related data to Google, it knew both his identity and his location. That is enough. *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 10 (1st Cir. 2009) (holding that known effects in the forum state made it foreseeable that defendant might be held accountable for its intentional torts there); *Kim v. Veglas*, 607 F. Supp. 2d 286, 295 (D. Mass. 2009) ("Indeed, the general rule in this circuit holds that where a defendant's out-of-forum actions intentionally cause tortious injury in the forum, jurisdiction will obtain for claims arising from that injury.") (citation omitted).

Finally, the First Circuit has explained that in considering the "reasonableness" prong, courts should assess the "gestalt factors," which include:

> (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies.

*Sawtelle v. Farrell*, 70 F.3d 1381, 1394 (1st Cir. 1995). Here, each of these factors weighs in favor of finding that exercising personal jurisdiction over Defendant is reasonable. Any burden to Defendant appearing in this action is not "onerous in a special, unusual, or other

constitutionally significant way." *Bermudez v. Newlong Mach. Works, Ltd.*, 98 F. Supp. 3d 47,

55 (D. Mass. 2015). Meanwhile, Massachusetts has a strong interest in protecting the privacy

rights of its citizens. *Conning v. Halpern*, 2019 WL 2514730, at *7 (D. Mass. June 18, 2019)

("Massachusetts does have an interest in ensuring that foreign individuals who engage in

business relationships with its citizens do not commit torts against them"). Likewise,

"Massachusetts has a 'stake in being able to provide a convenient forum for its residents to

redress injuries inflicted by out-of-forum actors.'" *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir.

2007) (quoting *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 62

(1st Cir. 2002)). Plaintiff also "has a significant interest in convenient and effective relief, which

this forum should offer, and there is not a clearly superior forum that will better promote the

substantive social policies of the sovereigns involved." *Conning*, 2019 WL 2514730, at *7;

*Adelson*, 510 F.3d 51 ("[A] resident of the state, has an interest in bringing this action in

Massachusetts, which weighs in favor of a finding of personal jurisdiction.").

### C.      Personal Jurisdiction Exists Under Rule 4(k)(2)

Even if the Massachusetts long-arm statute does not provide a basis for personal

jurisdiction over defendant, Fed. R. Civ. P. 4(k)(2) does. Rule 4(k)(2) provides that:

> For a claim that arises under federal law, serving a summons or
> filing a waiver of service establishes personal jurisdiction over a
> defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts
> of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States
> Constitution and laws.

Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) thus "has three requirements: (1) the cause of action must

arise under federal law; (2) the defendant must not be subject to the personal jurisdiction of any

state court of general jurisdiction; and (3) the federal court's exercise of personal jurisdiction

must comport with due process." *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6 (1st Cir. 2018)  The purpose of this rule is to close the loophole in which "foreign defendants who lacked single-state contacts sufficient to bring them within the reach of a given state's long-arm statute (whether by reason of the paucity of the contacts or of limitations built into the statute itself), but who had enough contacts with the United States as a whole to make personal jurisdiction over them in a United States court constitutional, could evade responsibility for civil violations of federal laws that did not provide specifically for service of process." *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 40 (1st Cir. 1999).

Here, the first requirement of Rule 4(k)(2) is met because Plaintiff asserts a cause of action under the VPPA, a federal statute.  Likewise, the second requirement of Rule 4(k)(2) is satisfied because Defendant is "not subject to jurisdiction in any state's courts of general jurisdiction" as it is neither domiciled nor "fairly regarded at home" in any state.  *Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 12 (2025) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017)); *see also* MTD at 16 ("Valnet's principal place of business is located in Montreal, Canada."); Arisohn Decl. Ex. B (showing that Valnet is incorporated under Quebec law).

Finally, as to Rule 4(k)(2)(B), "the due process requirements with which the federal court's exercise of personal jurisdiction must comport are those set by the Fifth, not Fourteenth, Amendment . . . ." *Licht v. Binance Holdings Ltd.*, 2025 WL 625303, at *27 (D. Mass. Feb. 5, 2025).  Recently, the Supreme Court held that there is a meaningful difference between the two due process clauses as it "decline[d] to import the Fourteenth Amendment minimum contacts standard into the Fifth Amendment." *Fuld*, 606 U.S. 1 at 16.  "Rather," the court held, "the Due Process Clause of the Fifth Amendment necessarily permits a more flexible jurisdictional inquiry

commensurate with the Federal Government's broader sovereign authority." *Id.* The Court did not "delineate the outer bounds of the Federal Government's power, consistent with due process, to hale foreign defendants into U.S. courts," nor did it decide whether the Fourteenth Amendment's reasonableness inquiry was still "constitutionally required" under the Fifth Amendment. *Id.* at 23.

Here, the exercise of personal jurisdiction over Defendant satisfies constitutional requirements because, as the VPPA demonstrates, "[t]he Federal Government has an exceedingly compelling interest in providing a forum for American victims" of privacy violations and "American plaintiffs have a strong interest in seeking justice through [VVPA] damages actions in U.S. courts." *Fuld*, 606 U.S. at 4 (discussing the federal government's interest in protecting terrorism victims). The alternative would lead to absurd results; actors like Defendant outside of the United States could repeatedly and systematically violate the privacy rights of U.S. citizens *en masse* without repercussion despite Congress's express desire to curb such activity.

In addition, while no longer a necessary inquiry, Defendant's minimum contacts with the United States as a whole also demonstrates that due process under the Fifth Amendment is satisfied. *In re Fairfield Sentry Ltd.*, 671 B.R. 404, 418 (Bankr. S.D.N.Y. 2025) ("[A]ny defendants that have sufficient minimum contacts with the forum would also satisfy the more flexible personal jurisdictional standards set forth in *Fuld*."). First, Plaintiff's VPPA claim arises out of or relates to Defendant's activities in the United States. Defendant installed trackers on the Website knowing that they would collect information from its users' computers in the United States and share that data with Google. Second, Defendant purposefully availed itself of the privilege of conducting activities within the United States as a whole and Plaintiff's claim arises out of that forum conduct. "Defendant owns and operates gamerant.com, which is used

throughout . . . the United States." Compl. ¶ 6. And, according to its own website, more than

232 million of its 448 million monthly sessions are from users located in the United States.

Arisohn Decl., Ex. A. It follows that more than half of Defendant's revenue is likely derived

from the United States as well. In other words, Defendant has not merely made its website

available in the United States; its entire business model is premised on access to the U.S. market

and it has used its websites to engage "in sizeable and continuing commerce with United States

customers" and therefore "should not be surprised at United States-based litigation." *Plixer Int'l,

Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 8 (1st Cir. 2018). Finally, the reasonableness inquiry

largely follows the analysis under the Massachusetts long-arm statute: Defendant will have no

special burden in appearing this forum, the United States has an interest in adjudicating a

violation of a federal statute, and Plaintiff has an interest in obtaining convenient and effective

relief in his home country. *See Fuld*, 606 U.S. at 4 ("[R]espondents do not assert lack of notice

or contend that litigating in the United States forces them to bear an unfair or unmanageable

burden" and litigation in the United States will not be "so gravely difficult and inconvenient as to

render the exercise of personal jurisdiction unreasonable and unfair.") (cleaned up).

### D. Jurisdictional Discovery Is Warranted

Based on the preceding analysis, there is already a sufficient basis for the Court to

exercise personal jurisdiction over Defendant, whether under the Massachusetts long-arm statute

or under Fed. R. Civ. P. 4(k)(2). If, however, the Court finds that there are currently not enough

facts before it to make that determination, it should grant Plaintiff leave to take jurisdictional

discovery on Defendant's contacts with both Massachusetts and the United States as a whole.

The First Circuit has "long held that 'a diligent plaintiff who . . . makes out a colorable case for

the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional

discovery.'" *United States v. Swiss Am. Bank*, 274 F.3d 610, 625 (1st Cir. 2001) (emphasis

omitted) (quoting *Sunview Condo. Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir. 1997)).

Here, where the currently available facts discussed herein point to Defendant having significant

contacts with both Massachusetts and the United States as a whole, discovery is likely to confirm

that an exercise of personal jurisdiction is warranted.  Defendant counters that the Court should

not grant leave to Plaintiff to conduct jurisdictional discovery because "Plaintiff's counsel has

had ample opportunity to research facts bearing on jurisdiction."  MTD at 17.  But, of course, the

focus of jurisdictional discovery will be on information that is not publicly available, most

notably Defendant's business dealings and revenue streams, which, as a private company,

Defendant does not publicly disclose.

## II.    PLAINTIFF DID NOT CONSENT TO DEFENDANT DISCLOSING HIS VIDEO-VIEWING BEHAVIOR

### A.    Adjudication of Defendant's Affirmative Defense of Consent Is Not Appropriate on a Motion to Dismiss

"Consent is generally an affirmative defense and may be considered on a motion to

dismiss only when 'the facts establishing the defense are clear from the face of the complaint as

supplemented by 'matters fairly incorporated within it and matters susceptible to judicial

notice.'"  *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 43-44 (D. Mass. 2023) (quoting

*Monsarrat v. Newman*, 28 F.4th 314, 318 (1st Cir. 2022) (citation omitted)).  Here, Defendant's

consent defense necessarily fails because "a close reading of the complaint reveals no reference

to Defendants' privacy policies."  *Id.*  "Therefore, the Privacy Policy is not properly before the

Court, and Defendant's argument regarding consent fails at this stage."  *Id.* (cleaned up); *Garcia

v. Bandai Namco Ent. Am. Inc.*, 2025 WL 2451033, at *9 (C.D. Cal. Aug. 7, 2025) ("The Court

cannot at this stage determine whether Plaintiff consented to Defendant's disclosures consistent

with VPPA requirements."); *Thornton v. Mindvalley, Inc.*, 2025 WL 877714, at *5 (N.D. Cal.

Feb. 14, 2025) ("Even if the Court could consider the content of the Policy, the VPPA's

numerous consent requirements would require the Court to make factual findings regarding how consent was presented to Plaintiffs that are inappropriate at this stage."); *Ade v. Viki, Inc.*, 2024 WL 1880153, at *4 (N.D. Cal. Mar. 28, 2024) ("the issue of consent is not suitable for decision on a motion to dismiss" and "[t]he VPPA's consent requirements present factual issues regarding how the alleged consent form was presented to the consumer"); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1023 (D. Minn. 2023) (denying a motion to dismiss a VPPA claim based on consent through a privacy policy because whether the plaintiff "consented to the disclosure of his personally identifiable information in a way that meets § 2710(b)(2)(B) seems like an affirmative defense that the [defendant] bears the burden to plead and prove"); *Nguyen v. Elsevier Inc.*, 2025 WL 2901059, at *3 (N.D. Cal. Oct. 7, 2025) ("The Court agrees with Plaintiffs that determining whether Plaintiffs consented to the disclosure of PII pursuant to § 2710(b)(2)(B) is a 'fact-intensive inquiry' inappropriate for a motion to dismiss and would require the resolution of too many facts not presently before the Court.").

In a footnote, Defendant attempts to distinguish *Adams* on the ground that "Plaintiff has not alleged that the consent provided was insufficient . . . ." MTD at 19, n.6. But Plaintiff goes even further than that by expressly alleging that he "did not provide Defendant with any form of consent, written or otherwise, to disclose [his] PII or video viewing activity to third parties." Compl. ¶ 40; *id.* ¶ 5 ("Unbeknownst to Plaintiff, and without his consent, Defendant shared Plaintiff's video watching activity and his PII with Google through its use of Google Tag and Google Analytics."). "This allegation undermines Defendant's claim that [Plaintiff] gave consent to disclose his personally identifiable information, and there remain factual issues to resolve. Dismissal on this basis would be inappropriate at this stage." *Adams*, 680 F. Supp. 3d at 44 (cleaned up).

Notably, not only does Defendant fail to contradict Plaintiff's allegation that he did not provide consent, but the Smagorinsky Declaration, which only shows screenshots from gamerant.com as they appeared on November 10, 2025—after this case was filed—shows that users never had to agree to Defendant's Privacy Policy. According to Mr. Smagorinsky, when users logged in using their Google account, they were then presented with a pop-up page stating that "you can review Game Rant's privacy policy . . . ," not that they were agreeing to that policy or that they would be bound by its terms. Smagorinsky Decl., Ex. B (emphasis added); *id.* ¶ 6 (confusingly referring to the privacy policy on screenrant.com, a website not at issue in this litigation). In other words, when users like Plaintiff logged in through their Google accounts, they never had to view or affirmatively agree to the Privacy Policy. And a pure browsewrap agreement does not satisfy the VPPA's requirement for "informed, written consent." *Edwards v. MUBI, Inc.*, 773 F. Supp. 3d 868, 880 (N.D. Cal. 2025) ("A website must use clear language to indicate what action will bind the user to the terms.").

Based on these disputed issues of fact, the Court should also deny Defendant's request for judicial notice. *See, e.g.*, *Nguyen v. Elsevier Inc.*, 2025 WL 2901059, at *2 (N.D. Cal. Oct. 7, 2025) (holding in a VPPA case that a privacy policy used for a consent defense is "inappropriate for judicial notice, particularly at the motion to dismiss stage"); *Fan v. NBA Props. Inc.*, 2024 WL 1297643, at *3 n.4 (N.D. Cal. Mar. 26, 2024) ("There is a factual dispute as to whether, after Fan created his nbatopshot.com account, he saw a 'pop up' window asking him to 'reaffirm' his consent to the website's Terms of Use and Privacy Policy every time he logged into the website. As such, the Court declines to take judicial notice of defendants' Exhibit H."); *Jackson v. Fandom, Inc.*, 2023 WL 4670285, at *2 (N.D. Cal. July 20, 2023) (denying the defendant's request for judicial notice because it was "unclear whether the webpages, Terms of Use, and

Privacy Policy submitted" were the same versions the plaintiff viewed); *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *3 (N.D. Cal. Apr. 5, 2019) (denying judicial notice of a privacy policy and other documents because the facts in the exhibits "cannot be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 771 (N.D. Cal. 2025) ("Plex's website did not provide reasonably conspicuous notice of the terms of service or privacy policy, and Plaintiff did not unambiguously manifest his assent to be bound by them. This is fatal to Plex's argument that Plaintiff consented to disclosure of his video viewing activities.").

**B.      Defendant's Privacy Policy Does Not Constitute Consent Under the VPPA**

On the merits as well, Defendant's Privacy Policy does not constitute consent for purposes of the VPPA. Not only does the Privacy Policy fail to disclose that Defendant would share video-related data with third parties, but it does not comply with the VPPA's strict requirements for obtaining consent.

The VPPA requires the following for valid consent:

> A video tape service provider may disclose personally identifiable information concerning any consumer . . . to any person with the informed, written consent (including through an electronic means using the Internet) of the consumer that—
>
> (i) is in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer;
>
> (ii) at the election of the consumer—
>
>> (I)  is given at the time the disclosure is sought; or
>>
>> (II) is given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner; and
>
> (iii) the video tape service provider has provided an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at

the consumer's election

18 U.S.C. § 2710(b)(2)(B).

Here, Defendant's Privacy Policy does not satisfy any of these requirements. As an initial matter, it does not state anywhere that Defendant will disclose users' PII as that term is defined under the VPPA: "information which identifies a person as having requested or obtained specific video materials or services." 18 U.S.C. § 2710(a)(3). Nowhere in the Privacy Policy does it state that Defendant will disclose video-related data to third parties. While the Privacy Policy does reference Defendant's use of cookies and pixels, it does not expressly state anywhere that Defendant will use those technologies to disclose data specifically related to videos. Smagorinsky Decl., Ex. D. For instance, through Google Tag and Google Analytics, Defendant sent Google information specifically identifying Plaintiff as having viewed a video and the name of that video. Compl. ¶ 24. Because the Privacy Policy makes no reference to Defendant disclosing that kind of data, it provides "an insufficient basis for this Court to find that Plaintiff's allegations regarding [his] lack of consent [is] implausible and require[s] dismissal." *Plotsker v. Envato Pty Ltd.*, 2025 WL 2481422, at *8 (C.D. Cal. Aug. 26, 2025).

In addition, any consent obtained through the Privacy Policy is invalid because it was not provided "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b)(2)(B)(i). Here, the Privacy Policy includes many different legal obligations, including but not limited to whether consumers consent to (1) the collection of non-video related data, including their telephone number, payment information, location, operating system, and browser type, Smagorinsky Decl., Ex. D at 3; Defendant's use of log files, *id.* at 3; (3) the Defendant's use of cookies unrelated to the disclosure of video-related data and/or users' identities, *id.*; advertisers using information about them to provide specific

advertisements, *id.* at 4; and (5) Defendant storing their data, *id.* at 6.

Based on the inclusion of these other provisions, Defendant did not obtain consent "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." *See Cappello v. Walmart Inc.*, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019) ("[T]he plain language of the VPPA does indeed require video tape service providers to (1) request consumers' consent to a privacy disclosure that addresses only the use of personally identifiable information connected with video purchases and no other privacy topic, and (2) obtain the act of consent separately from the consumer's agreement to the retailer's terms of use, general privacy policy, and the commercial terms of the purchase."); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1023 (D. Minn. 2023) ("Factually, it is not obvious that the Star Tribune Privacy Policy addresses a consumer's consent to disclosure of his or her video-viewing history, and it appears to cover many legal obligations beyond consent to disclose personally identifiable information under the VPPA."); *Fan v. NBA Props. Inc.*, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) ("the Court is skeptical of defendants' contention that these policies satisfy the VPPA's 'distinct and separate' requirement.") (citing *Cappello*); *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 771 n.9 (N.D. Cal. 2025) (same, citing *Cappello*).

In response, Defendant cites *Lakes v. Ubisoft, Inc.*, 2025 WL 1036639, at *8-9 (N.D. Cal. Apr. 2, 2025) for the proposition that a privacy policy with topics unrelated to the disclosure of video-related data can be "distinct and separate" for purposes of consent under the VPPA. But that decision, which is currently on appeal, ignores the plain language of the VPPA and is evidently an outlier. It also contains virtually no analysis, and so its application here is far from clear. The little analysis that *Lakes* does contain is also flawed; while the court accepted the characterization of privacy policy there as a "disclosure" or "statement," rather than an

"obligation," consumers' consent to a privacy policy necessarily transforms it from the former to the latter. Indeed, accepting Defendant's version of what constitutes a "distinct and separate" form of consent would "undo the balance Congress struck by effectively negating the VPPA's consent requirement." *Pileggi v. Washington Newspaper Publ'g Co., LLC*, 2024 WL 324121, at *7 (D.D.C. Jan. 29, 2024) (cleaned up).

Any consent purportedly obtained through the Privacy Policy also fails because that document does not comply with the VPPA's provisions for termination and withdrawal. Under the VPPA, consent can only be given "for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner." 18 U.S.C. § 2710(b)(2)(B)(ii). Here, however, the Privacy Policy says nothing about a two-year time limitation. Likewise, the consumer is entitled to make an "election" as to whether the consent is given ahead of time for the two-year period, or at the time of disclosure, but the Privacy Policy does not provide consumers with an opportunity to choose. Likewise, a consumer must be given "an opportunity, in a clear and conspicuous manner," for consent to be withdrawn. Here, however, Defendant buries the ability to withdraw consent on page two of an eight-page document and then confusingly tells consumers to "please contact us at data@valnetinc&#46com." Smagorinsky Decl., Ex. D.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's motion in its entirety. However, should the Court grant any part of Defendant's motion, Plaintiff respectfully requests leave to file an amended complaint.

Dated: November 24, 2025         **REARDON SCANLON LLP**

                                       By:    */s/ James J. Reardon, Jr.*
                                               James J. Reardon, Jr.

James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT  06107
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
E-mail:  james.reardon@reardonscanlon.com

**ARISOHN LLC**
Joshua D. Arisohn (to be admitted *pro hac vice*)
94 Blakeslee Rd.
Litchfield, CT 06759
Telephone: (917) 656-0569
Email: josh@arisohnllc.com

*Attorneys for Plaintiff*