UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN SAUL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>VALNET INC.,<br><br>Defendant. | CASE NO. 1:25-CV-12236-JEK |

**REPLY IN SUPPORT OF DEFENDANT VALNET INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM**
**(Leave to File granted December 4, 2025)**

Pursuant to Local Rule 7.1(b)(3), Defendant Valnet Inc. ("Defendant" or "Valnet') respectfully submits this Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim ("Motion"). Defendant incorporates by reference its Motion and Memorandum of Law in Support of its Motion. For the reasons discussed in those documents and this Reply, Plaintiff's lawsuit should be dismissed.

## I. THE COURT LACKS PERSONAL JURISDICTION OVER VALNET

### A. The Massachusetts Long-Arm Statute Does Not Apply

Massachusetts courts may "exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's … transacting any business in this commonwealth." Mass. Gen. Laws ch. 223(A), § 3(a). While "the First Circuit has sometimes treated Massachusetts' long-arm statute as coextensive with the requirements of due process, the long-arm statute can impose more restrictive limits." *Frawley v. Nexstar Media Grp., Inc.*, 2023 WL 6065768, at *3 (D. Mass. Sept. 18, 2023). The

Opposition's view seems to be that any business with a generally available website is subject to this Court's jurisdiction, without regard to whether that business has offices in Commonwealth, employs persons in the Commonwealth, or specifically targets users in the Commonwealth. That is not the law.

### 1. Plaintiff Has Failed To Plead Facts Demonstrating That Valnet Transacted Business In The Commonwealth Within The Meaning Of The Long-Arm Statute

"[I]solated transactions unaccompanied by 'purposeful intent' on the part of [a] defendant[] and having only a 'slight effect on the commerce *of the Commonwealth*' are not enough to support jurisdiction under subsection (a) of the long-arm statute." *Sun Life Assur. Co. of Canada v. Sun Bancorp, Inc.*, 946 F. Supp. 2d 182, 188 (D. Mass. 2012) (emphasis added) (additional quotations and citation omitted); *Frawley*, 2023 WL 6065768, at *4. The Opposition does not address Valnet's purported impact on the commerce "of the Commonwealth." *See id.* Instead, Plaintiff focuses on impacts *to Valnet's* operations, speculating as to "ad impressions" and "ad revenue" generated by Valnet's overall business. Opp'n. at 3. The Opposition argues that, despite having no employees or offices in Massachusetts, and despite not uniquely targeting Massachusetts, Valnet is subject to this Court's jurisdiction because over a single year approximately 0.2% of Valnet's website views and revenue could be attributed to Massachusetts users (not necessarily Plaintiff).[1] This is incorrect.

*First*, Plaintiff provides no authority for the idea that 0.2% percent of website views coming from a particular state is sufficient to subject a party to that state's jurisdiction.

---

[1] Plaintiff cites *Access Now, Inc. v. Sportswear, Inc.* for support, a case where the revenue allegedly traceable to the Commonwealth was nearly nineteen times the amount testified to here. *Compare* Declaration of Yury Smagorinsky, ¶ 3 *with* Opp'n. at 4 (citing *Access Now, Inc. v. Sportswear, Inc.*, 298 F. Supp. 3d 296, 301 (D. Mass. 2018)).

*Second*, Plaintiff is improperly leveraging the Opposition to speculate on matters that Plaintiff did not address in the Complaint, including page views, ad impressions, and the like. Opp'n. at 3. Even if these claims were raised in the Complaint (which they were not), they are speculative, not properly pleaded or proven facts supporting jurisdiction.

*Lastly*, the Opposition avoids the proper inquiry. The proper inquiry is whether "merely operating a website" can be said "to have more than a 'slight effect on the commerce *of the Commonwealth*.'" *Frawley*, 2023 WL 6065768, at *4 (emphasis added). Here, as in *Frawley*, the answer is no. It was Plaintiff's burden to demonstrate that Valnet "actively solicited Massachusetts citizens more than citizens of any other state." *See id.* Because Valnet's "only relevant presence in Massachusetts" is the "availability of the" Website, Plaintiff did not meet their burden to show that Valnet "transact[s] business" in the Commonwealth within the meaning of Section 3(a). *See id.*

**2. Plaintiff's Complaint Does Not Set Forth Facts Sufficient to Apply Sections (c) and (d) of the Massachusetts Long-Arm Statute**

Plaintiff seeks to apply Section (c) of the Massachusetts long-arm statute, now claiming that Valnet caused a "tortious injury by an act or omission in this commonwealth." Opp'n at 4 (citing Mass. Gen. Laws ch. 223A, § 3(c)). To start, Plaintiff's Complaint is based on the VPPA and does not sound in traditional tort. Further, Plaintiff offers no authority holding that merely making a website available in Massachusetts constitutes "an act or omission" *in* "this

commonwealth." *See id.* Given Valnet's lack of contacts with the forum, it cannot be said that Valnet acted or failed to act in any relevant manner "in this commonwealth."[2][3]

Section 3(d) of the statute does not apply either. It is well understood that Section 3(d) is the Massachusetts long-arm statute's general personal jurisdiction provision and is applicable only if the defendant is subject to general personal jurisdiction. Plaintiff has not – and cannot – make that argument with regard to Valnet, a Canadian corporation. *See Pettengill v. Curtis*, 584 F. Supp. 2d 348, 357 (D. Mass. 2008) ("§ 3(d) would only apply if general jurisdiction existed over the ... [d]efendants."); *Krua v. Sirleaf*, 2019 WL 1936733, at *4 (D. Mass. May 1, 2019) (same).

## II. EXERCISING JURISDICTION OVER VALNET WOULD NOT COMPORT WITH CONSTITUTIONAL DUE PROCESS

Here, to establish personal jurisdiction in conformity with the Fourteenth Amendment's Due Process Clause, Plaintiff must show that there is specific jurisdiction. *See Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). To make out that latter showing, Plaintiff must show relatedness between the claim and Valnet's forum contacts,

---

[2] Plaintiff cites the Central District of California case *Fudge v. Delta Air Lines, Inc.*, but in that case, it was evident that the defendant, Delta Air Lines, Inc., a national airline, "regularly conducts business in California." *Fudge v. Delta Air Lines, Inc.*, 753 F. Supp. 3d 987, 992 (C.D. Cal. 2024). Further, the alleged privacy violations involved information the defendant actively solicited in processing customers' airline tickets and gaining access to information concerning their movements to and from the forum state. Valnet does not have a similar presence in the Commonwealth, nor does Valnet specifically target users traveling into and out of the Commonwealth.

[3] The only recent Massachusetts case Plaintiff cites in this section, *Advent Techs., Inc. v. Kaye*, 2024 WL 1885936 (D. Mass. Apr. 29, 2024), does not help Plaintiff. There, the Court granted the motion to dismiss because the defendants' allegedly tortious conduct did not occur "in Massachusetts or with the assistance of Massachusetts accomplices[.]" *Id.* at *7.

purposeful availment, and that the exercise of jurisdiction is reasonable. *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018). Plaintiff has failed to do so.

### A. Plaintiff's Claims Are Not Sufficiently Related To Valnet's Contacts With Massachusetts

In cases involving websites, courts decline to find relatedness when the connection stems from a plaintiff's unilateral activities, rather than a defendant's contacts with the Commonwealth. *See Riley v. Zeus Networks, LLC*, 2025 WL 2793753, at *3 (D. Mass. Sept. 30, 2025). That is precisely the case here. Plaintiff cites *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, a case involving tortious interference with an employment contract, to argue that the relatedness prong is satisfied. *Id.* at 7 (citing *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 10 (1st Cir. 2009)). However, the court in *Astro-Med* emphasized that the defendant targeted a particular employee, knew that his company was in Rhode Island, and knew that his employment agreement was "governed by Rhode Island law." *Astro-Med, Inc.*, 591 F.3d at 10. In other words, the offense was targeted towards a particular individual in the forum state. There is no such specific targeting here and, therefore, no "relatedness" as it is understood in the First Circuit.

### B. Plaintiff Cannot Demonstrate Purposeful Availment

As a case cited by Plaintiff makes clear, the "mere availability of a primarily informational website is not enough — by itself — to render a defendant susceptible to jurisdiction in a particular forum" otherwise defendants would be "amenable to suit anywhere within the vast reach of the internet." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 125 (1st Cir. 2022) (observing that "[n]othing in the record indicat[ed]" that the defendant

"sought to serve Massachusetts residents in particular"); *see also Riley*, 2025 WL 2793753, at *2.

Indeed, just a few months ago, another court in this District decided a motion to dismiss for lack of personal jurisdiction in *Riley v. Zeus Networks, LLC* and reached a similar conclusion. *Riley*, 2025 WL 2793753, at *3. The matter involved the VPPA. It involved a cellphone app and allegations of unauthorized disclosure of information. Valnet discussed the case at length in its moving papers. Tellingly, the Opposition does not mention *Riley* at all. On similar facts, the case makes clear that a defendant treating the Commonwealth "like any other state" is not purposeful availment. *Riley*, 2025 WL 2793753, at *2. Valnet submits that the Court should reach the same conclusion it reached in *Riley* and dismiss Plaintiff's claims.

**C. <u>Personal Jurisdiction Over Valnet Would Not Be Reasonable</u>**

Because Valnet has no contacts in this forum, would have to expend significant resources to adjudicate this dispute in the Commonwealth, and has not availed itself of the privileges of the Commonwealth sufficient to expect to adjudicate disputes in the Commonwealth, the "reasonableness" factor weighs against exercising jurisdiction as well.

**D. <u>Jurisdictional Discovery Should Be Denied</u>**

The Opposition contends that Plaintiff has made a showing sufficient to warrant jurisdictional discovery. Because Plaintiff has failed to plead – and has yet to demonstrate – that Plaintiff can overcome the due process hurdles in this case, such discovery should be denied. Plaintiff has yet to allude to any unique targeting, specifically directed at the residents of Massachusetts that would demonstrate purposeful availment. Given that, Plaintiff has failed to set forth "facts to the court which show why jurisdiction would be found if discovery were

permitted." *See Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 27 (1st Cir. 2007); *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 626 (1st Cir. 2001); *Sport Pro Surfacing, LLC v. Flake*, 2024 WL 4495106, at *4 (D. Mass. Oct. 15, 2024).

In addition, the sworn Declaration of Yury Smagorinsky offered insight into Valnet's Massachusetts users, the revenue attributable to them, and the percentage of the views that come from them. Plaintiff claims that he will want to look into Valnet's "business dealings and revenue streams." Opp'n. at 14. But Plaintiff has offered nothing more specific that it seeks beyond the information Mr. Smagorinsky has already provided. *See Negron-Torres*, 478 F.3d at 27. The request for jurisdictional discovery should be denied.

## III. PLAINTIFF'S RULE 4(K)(2) ARGUMENT FAILS AS A MATTER OF LAW

Unable to establish personal jurisdiction under Massachusetts' long-arm statute, Plaintiff now advances an entirely new theory, *never pleaded in the Complaint*, that the Court may exercise jurisdiction over Defendant under Fed. R. Civ. P. 4(k)(2). This argument also fails. Rule 4(k)(2) has three requirements: (1) the claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction (the "Negation Requirement"); and (3) exercising jurisdiction is consistent with the Constitution and federal law. *United States. v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir. 1999). The second and third requirements are plainly not met.

### A. Plaintiff Cannot Satisfy the Negation Requirement

Rule 4(k)(2) "by its terms" requires Plaintiff to show that Defendant is not subject to personal jurisdiction in *any state*. *Motus, LLC*, 23 F.4th at 127 (citing *Swiss Am. Bank*, 191 F.3d

at 41 ("When Rule 4(k)(2) is put in play, a burden-shifting framework applies")).[4] Therefore, to rely on Rule 4(k)(2), Plaintiff must, *first*, show that all three requirements of the Rule 4(k)(2) test are satisfied and, *second*, certify that "based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state." *Swiss Am. Bank*, 191 F.3d at 41. Only then does "the burden shift[] to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient." *Id.* Plaintiff has made no such certification. That failure ends the inquiry.

### B. <u>Plaintiff Also Fails to Establish the Due Process Requirement Under the Fifth Amendment</u>

Even if Plaintiff could satisfy the Negation Requirement (it cannot), Rule 4(k)(2) also requires Plaintiff to demonstrate that exercising jurisdiction comports with the Fifth Amendment's Due Process Clause. *United States v. Swiss Am. Bank* ("*Swiss II*"), 274 F.3d 610, 618 (1st Cir. 2001). Under the Fifth Amendment, Plaintiff must show that Defendant has adequate contacts with the United States as a whole. *Id.*

Plaintiff has plainly not met this burden here. The First Circuit applies the same[5] "minimum contacts" framework to assess nationwide contacts. *Plixer Int'l, Inc.*, 905 F.3d at 7 (1st Cir. 2018). But even under this more flexible federal standard, the Plaintiff must

---

[4] Under the First Circuit's approach, a plaintiff must certify that defendant is not subject to jurisdiction in any state, at which point the burden shifts to the defendant to refute the plaintiff's certification. *Swiss Am. Bank*, 191 F.3d at 41.

[5] In evaluating personal jurisdiction under Rule 4(k)(1)(A) a federal court "borrows and applies the applicable long-arm statute and governing principles from the forum state." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009) (quoting *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009)).

demonstrate that the defendant's contacts with the United States are purposeful and related to the claims at issue. But Plaintiff identifies no U.S.-directed conduct by Defendant, no offices, no employees, no targeted marketing, no U.S.-based business operations, and, as discussed *supra*, no purposeful availment. Plaintiff instead relies on generalized allegations about online availability, a theory the First Circuit has repeatedly cautioned cannot alone establish minimum contacts. *See Plixer Int'l, Inc.*, 905 F.3d at 7-8 (noting the Supreme Court has not defined how online activity translates into jurisdictional contacts and emphasizing reluctance to expand the doctrine). Because Plaintiff has not met its burden of proof on this issue, Rule 4(k)(2) cannot save Plaintiff's jurisdictional claims.

### C. Jurisdictional Theories Must Be Pled In The Complaint

Further, Plaintiff's attempt to rely on Rule 4(k)(2) cannot salvage his personal jurisdiction claims, because it was not pled in the complaint. A plaintiff cannot cure a complaint's deficiencies through arguments raised for the first time in opposition. *See Wea v. Carvajal*, 763 F. Supp. 3d 165, 169 (D. Mass. 2025) (citing *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998)). Here, Plaintiff's Complaint does not allege that personal jurisdiction is based on the federal long-arm statute under Rule 4(k)(2) and Plaintiff may not properly assert this theory for the first time in his Opposition.

## IV. PLAINTIFF'S VPPA CLAIM IS ALSO BARRED BY PLAINTIFF'S CONSENT

Plaintiff's Opposition raises two arguments concerning consent. *First*, Plaintiff asserts that the issue of consent can never be adjudicated at the motion-to-dismiss stage. *Second*, Plaintiff contends that the consent provided by Plaintiff does not satisfy the VPPA's

requirements and is therefore insufficient. Both arguments lack merit and are addressed below in turn.

**A. <u>Adjudication of Consent Is Appropriate On A Motion to Dismiss</u>**

Contrary to Plaintiff's contention, the Court may adjudicate consent at the motion-to-dismiss stage, where, as here, the facts establishing the defense are apparent from the face of the complaint and materials properly incorporated into it. *Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 43–44 (D. Mass. 2023); *see also* Mot. at 19.

That standard is met here. Plaintiff affirmatively alleges that he created an account and used Defendant's services: allegations that necessarily place at issue the onboarding process and the policies to which users are required to assent. Compl. ¶ 1, 5 ("This is a class action lawsuit brought on behalf of all persons who have an account on gamerant.com"; "Plaintiff has had an account on the Website since approximately November 2024."). Plaintiff's own allegations therefore necessitate bringing the relevant terms and policies within the scope of materials the Court may consider at this stage. *See Adams*, 680 F. Supp. 3d at 44.

Plaintiff also contends that Valnet cannot distinguish *Adams* because the Complaint here alleges no consent was provided. Opp'n. at 15. But Plaintiff's argument mischaracterizes both *Adams* and his own allegations. Plaintiff alleges that the disclosure happened "[u]nbeknownst to Plaintiff, and without his consent." Compl. ¶ 5. These general allegations that disclosure occurred "unbeknownst" to him are not analogous to the allegations in *Adams*, where the complaint alleged the consent was not sufficient under the VPPA. *Id.* In contrast, the Complaint here expressly describes conduct that cannot occur without agreeing to Defendant's Privacy Policy. Because Plaintiff has placed account creation at issue, the Court may consider the

documents integral to that process, including the Privacy Policy, when evaluating Defendant's consent defense. *See Monsarrat v. Newman*, 28 F.4th 314, 318 (1st Cir. 2022) (materials may be considered where "fairly incorporated" into the complaint).

Plaintiff's attempt to rely on out-of-circuit cases does not alter the analysis. In *Edwards v. MUBI, Inc*., the court, applying California law, evaluated whether the user interface of MUBI's website provided reasonably conspicuous notice of its terms of use or privacy policy and whether plaintiffs unambiguously manifested assent to those terms. The court ultimately found that the *particular interface* at issue did not satisfy California's notice requirements. But the MUBI decision turned on California's specific "conspicuous notice" standard and the unique design of the MUBI interface. *Edwards v. MUBI, Inc*., 773 F. Supp. 3d 868, 880, 881 (N.D. Cal. 2025) ("the hyperlinks are not emphasized using any other common web design elements, such as the use of contrasting color font. This notice language appears five times smaller than the 'Try 7 Days Free' text[.]").[6] It has no bearing here –Valnet's Privacy Policy was provided in the same font case and right next to the "continue" button on the account creation page. *See* Smagorinsky Decl. Exhibit A, B, and C.

Further, Plaintiff fails to acknowledge the authorities allowing the consent defense to proceed on the motion to dismiss or engage with *Ubisoft v. Lakes*, which decided the same issue on a motion to dismiss and was cited in Valnet's Motion. The *Ubisoft* court analyzing similar

[6] Plaintiff cites MUBI to support his allegation that "a pure browsewrap agreement does not satisfy the VPPA's requirement for 'informed, written consent.'" Opp'n. at 16. Yet the agreement in question is not a so-called "browsewrap" because the link to the Privacy Policy was provided on the sign-in page. By contrast, a browsewrap agreement is "one in which an internet user accepts a website's terms of use merely by browsing the site." *See, e.g.*, *Keebaugh v. Warner Bros. Ent. Inc*., 100 F.4th 1005, 1014 (9th Cir. 2024) (internal citations omitted).

facts found that the user's affirmative acceptance of the privacy policy during account creation constituted valid consent under the VPPA. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1052 (N.D. Cal. 2025) ("Ubisoft's Privacy Policy, which all Ubisoft account holders must agree to, informs users that their information will be shared with third parties."). Similarly, in *Washington v. Flixbus, Inc.*, Court granted defendant's motion to dismiss without leave to amend for failure to state a claim because the user accepted plaintiff's privacy policy and terms of use. *Washington v. Flixbus, Inc.*, 2025 WL 1592961, at *4 (S.D. Cal. June 5, 2025). Plaintiff's reliance on California precedent, therefore, does not defeat Valnet's argument.

Plaintiff further alleges that the Smagorinsky Declaration "shows screenshots from gamerant.com as they appeared on November 10, 2025." Opp'n. at 16. However, Exhibit A to the Smagorinsky Declaration is a screen capture of the Wayback Machine website capturing the log-in page *as it existed on Nov. 11, 2024* – approximately at the time when Plaintiff created his account with the Website. *See* Compl. ¶ 5 ("Plaintiff has had an account on the Website since approximately November 2024"); *see also*, Smagorinsky Decl., Exhibit A. Because the facts necessary to determine consent appear on the face of the complaint, Defendant's affirmative defense is ripe for adjudication at this stage.

### B. <u>The Consent Provided Was Sufficient Under The VPPA</u>

Plaintiff argues that the consent provided during the account-creation process was insufficient under the VPPA based on two theories: (1) that the disclosure must explicitly mention the words "video-related" data, and (2) that the "distinct and separate" requirement means separate from any *other* privacy disclosures. Both lack merit.

### 1. The VPPA Does Not Require Enumeration Of Each Specific Data Element Shared

Plaintiff contends that the Privacy Policy is deficient because it "does not expressly state anywhere that Defendant will use [tracking] technologies to disclose data specifically related to videos." Opp'n. at 18. But the VPPA imposes no requirement that consent describe, with itemized specificity, every category of information that may be transmitted to a third party. Indeed, *Plotsker v. Envato Pty Ltd*., cited by Plaintiff, does not stand for the rule that a privacy policy or other forms of disclosure must specifically reference video-related data to comply with the VPPA. *See Plotsker v. Envato Pty Ltd*., 2025 WL 2481422, at *8 (C.D. Cal. Aug. 26, 2025).

Moreover, in *Ubisoft*, the court held that a privacy policy disclosing the use of cookies and tracking technologies was sufficient to establish consent for VPPA purposes because the user affirmatively accepted that policy during the log-in process. *Ubisoft*, 777 F. Supp. 3d at 1052 ("Ubisoft's Privacy Policy, which all Ubisoft account holders must agree to, informs users that their information will be shared with third parties."). The same is true here. The Privacy Policy expressly disclosed that Defendant uses cookies, pixels, and analytics tools operated by third parties. *See* Smagorinsky Decl. at 4. Plaintiff accepted those disclosures when creating his account. Nothing in the VPPA requires Defendant to isolate, segregate, or enumerate each specific data point, such as "video data" that might be collected through those technologies.

### 2. The Privacy Policy Satisfies the VPPA's Requirement That Consent Be "In a Form Distinct and Separate"

Plaintiff next argues that consent is invalid because the Privacy Policy "includes many different legal obligations" and therefore is not "distinct and separate" under the VPPA. Opp'n. at 19. This argument fails.

*First*, a privacy policy is not a document that imposes "legal or financial obligations" on consumers. It is, as courts have repeatedly held, a disclosure, not a contract. *See*, *e.g., Dyer v. N.W. Airlines Corps*., 334 F. Supp. 2d 1196 (D.N.D. 2004) (holding privacy policy is not a contract); *see also Ubisoft, Inc*., 777 F. Supp. 3d at 1059 (citing *Libman v. Apple, Inc*., 2024 WL 4314791, at *5 (N.D. Cal. Sept. 26, 2024) (deeming privacy policies "disclosures" and not legal obligations)).

*Second*, Plaintiff improperly attempts to transform the VPPA's "distinct and separate" requirement, which concerns separation from other legal or financial obligations, into a new rule requiring separation from *any other disclosures*. Nothing in the VPPA, supports the proposition that consent must be obtained through a standalone disclosure containing only information related to video data. The statute requires separation from obligations, not from other disclosures in a privacy policy.[7]

In fact, this specific issue was addressed by the *Ubisoft* court: Plaintiffs argued that the Privacy Policy does not comply with § 2710(b)(2)(B) because it contained other legal obligations of the consumer. However, the court held that courts routinely classify privacy policies as "disclosures" or "statements," not as obligations of the users. *Ubisoft, Inc*., 777 F. Supp. 3d at 1059. Plaintiff attempts to dismiss *Ubisoft* by arguing that a privacy policy becomes an "obligation" once consent is provided is groundless. Opp'n. at 20. This argument misunderstands the nature of privacy policies, which are not contracts as explained above.[8] A

[7] *Cappello*'s expansive interpretation of the statute to require any VPPA disclosure be separate from "other privacy topic" is not in line with the statutory wording that requires consent to be separate from other "legal or financial obligations." *Cappello v. Walmart Inc*., 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019).

[8] Privacy disclosures made in a privacy policy may, under certain circumstances, give rise to

user's acknowledgment of a disclosure does not transform that disclosure into a set of obligations.

Plaintiff's theory that the Privacy Policy renders consent invalid under the VPPA cannot be reconciled with the statute's text. The VPPA requires that consent be distinct and separate from other obligations, not that it be isolated from all other disclosures contained in a privacy policy. Defendant's Privacy Policy imposes no legal or financial obligations on users and therefore satisfies the VPPA's requirement as a matter of law. Plaintiff's attempt to broaden the statute to require a standalone, video-only disclosure finds no support in the statutory language and should be rejected.

## V. CONCLUSION

WHEREFORE, for all the reasons set forth herein and in its Motion, Defendant Valnet respectfully requests that this Court GRANT its Motion and dismiss Plaintiff's Complaint.

---

enforceable contractual obligations. *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 325 (E.D.N.Y. 2005) (finding that privacy policy on internet site gave rise to contract where plaintiffs alleged that they made flight reservations *in reliance* on express promises contained therein). *But see Gardner v. Health Net, Inc.*, 2010 WL 11597979, at *6 (C.D. Cal. Aug. 12, 2010) (holding "broad statements of policy do not generally give rise to contract claims").

DATED: December 4, 2025

Respectfully submitted,

Mitchell Silberberg & Knupp LLP

By: */s/ Lucy Holmes Plovnick*

Lucy Holmes Plovnick (BBO# 654918)
lhp@msk.com
Mitchell Silberberg & Knupp LLP
1818 N Street NW, 7th Floor
Washington, DC 20036
Telephone: (202) 355-7900
Facsimile: (202) 355-7888

*Attorneys for Defendant Valnet Inc.*

**CERTIFICATE OF SERVICE**

I, Lucy Holmes Plovnick, do hereby certify that on this 4th day of December, 2025, I caused a true and correct copy of the foregoing document to be served through the Court's CM/ECF Service.

*/s/ Lucy Holmes Plovnick*
Lucy Holmes Plovnick