**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| JONATHAN SAUL, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:25-cv-12236-JEK |
| VALNET INC., | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

**KOBICK, J.**

Plaintiff Jonathan Saul brings this putative class action lawsuit against defendant Valnet Inc., a Canadian corporation, for allegedly violating the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Saul claims that Valnet, through its website, knowingly disclosed his personally identifying information and video viewing activity to Google without his consent. Pending before the Court is Valnet's motion to dismiss the complaint for lack of personal jurisdiction or for failure to state a claim. For the reasons that follow, the motion will be denied. Saul meets the requirements of Federal Rule of Civil Procedure 4(k)(2) because he asserts a federal claim, he represents that Valnet is not subject to jurisdiction in any state's courts of general jurisdiction, and exercising specific personal jurisdiction over Valnet comports with the Fifth Amendment's Due Process Clause. Saul also plausibly alleges a claim under the VPPA.

**BACKGROUND**

The following facts are recounted as alleged in the complaint and supplemented with the jurisdictional evidence submitted in connection with the motion to dismiss. *See Keane v. Expeditors Int'l of Washington, Inc.*, 138 F.4th 613, 615 (1st Cir. 2025).

Valnet is a Canadian corporation incorporated under the laws of Quebec and principally based in Montreal. ECF 6, at 2; ECF 9-2, at 2-3; ECF 7-1, ¶ 2. Valnet owns and operates a popular gaming news website, gamerant.com, that "offers unique videos that cover a wide range of topics in video games." ECF 1, ¶¶ 1, 6, 19 (quotation marks omitted). The website is accessible to users in the United States, and Valnet derives revenue from those users. ECF 7-1, ¶ 3. Valnet allegedly installed Google Tag and Google Analytics on this website and, as a result, disclosed users' private information, including their name and what videos they watched, to Google. ECF 1, ¶¶ 2-3, 18, 21-22, 27, 39. Specifically, the data from Valnet permits Google to identify a user's name and email address based on their "Google Account ID." *Id.* ¶¶ 17-18. The URL transmitted by Valnet further allows Google to determine whether a page accessed by the user on gamerant.com hosts a video and the name of that video. *Id.* ¶ 23. For example, "https://gamerant.com/video/mafia-the-old-country-stays-true-to-its-roots-for-better-or-worse/" is the URL of a page containing a video of the game called "Mafia: The Old Country Stays True to Its Roots, For Better or Worse." *Id.*

Saul is a Massachusetts resident who has had an account on gamerant.com since November 2024 and a Google account since 2019. *Id.* ¶ 5. Saul has viewed "numerous" videos on that website. *Id.* He alleges that Valnet intentionally shared his personally identifiable information, including his Google Account ID, and video viewing activity to Google without his consent. *Id.* ¶¶ 4-5, 37, 39-40.

Saul filed this putative class action lawsuit in August 2025. ECF 1. He asserts a violation of the VPPA, 18 U.S.C. § 2710, and seeks to represent a class of "all persons in the United States with a gamerant.com account." *Id.* ¶¶ 28, 34-41. In November 2025, Valnet moved to dismiss the complaint for lack of personal jurisdiction or for failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively. ECF 5. After Saul opposed that motion and

Valnet filed its reply, the Court held a hearing and took the motion under advisement. ECF 8, 13, 17.

<b>DISCUSSION</b>

**I.      Personal Jurisdiction.**

Valnet first moves to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). In considering such a motion, the Court may use one of three methods to assess whether Saul has met his burden to establish personal jurisdiction: the prima facie method, the preponderance method, or the likelihood method. *See A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 & n.5 (1st Cir. 2016). The prima facie method is "most commonly employed in the early stages of litigation." *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83-84 (1st Cir. 1997). Under that approach, the Court asks whether Saul has proffered "evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). Saul cannot simply "rely on unsupported allegations in [his] pleadings." *A Corp.*, 812 F.3d at 58 (quotation marks omitted). He must instead "go beyond the pleadings and make affirmative proof." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 94 (1st Cir. 2024) (quotation marks omitted). The Court will give "credence to [Saul's] version of genuinely contested facts," *Baskin-Robbins*, 825 F.3d at 34, and will consider Valnet's proffered facts "only to the extent that they are uncontradicted," *Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007).

Saul invokes federal question jurisdiction pursuant to 28 U.S.C. § 1331 and asserts personal jurisdiction over Valnet under Federal Rule of Civil Procedure 4(k)(2). *See* ECF 1, ¶ 7;

3

ECF 8, at 10.[1] This Rule permits the exercise of personal jurisdiction following service if (1) the claim at issue "arises under federal law," (2) "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and (3) "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2); *see Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 6 (1st Cir. 2018) (detailing these "three requirements"). Conceding that Saul's VPPA claim arises under federal law, Valnet contests the other two elements. *See* ECF 13, at 7.

The second element requires "a certification to the effect that, 'based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state.'" *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 127 (1st Cir. 2022) (quoting *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41 (1st Cir. 1999)). Valnet contends that Saul made no such certification. In his opposition brief, however, Saul expressly represents that Valnet "is not subject to jurisdiction in any state's courts of general jurisdiction." ECF 8, at 11 (quotation marks omitted); *see United States v. Swiss Am. Bank, Ltd.*, 116 F. Supp. 2d 217, 220 (D. Mass. 2000) (citing motion to dismiss opposition in finding the plaintiff had "certified that the defendants [were] not subject to suit in the courts of general jurisdiction of any state"), *aff'd*, 274 F.3d 610 (1st Cir. 2001). Valnet is, as Saul notes, a Canadian corporation incorporated under the laws of Quebec with a principal place of business in Montreal. ECF 6, at 2; ECF 9-2, at 2-3; *see* ECF 8, at 11. Because Saul has made his initial showing, the burden shifts to Valnet "to produce evidence which, if credited, would show . . . that one or more

---

[1] Valnet argues that Saul cannot rely on Rule 4(k)(2) because he asserted that Rule only in his opposition, not the complaint. But "'Rule 4(k)(2) can be considered even when the plaintiff has affirmatively pled a different basis for personal jurisdiction.'" *Sunrise Techs., Inc. v. SELC Ireland, Ltd.*, No. 15-cv-11546-NMG, 2016 WL 3360418, at *8 (D. Mass. June 14, 2016) (quoting *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1296 (Fed. Cir. 2012)), *report and recommendation adopted*, 2016 WL 4007078 (D. Mass. July 25, 2016); *see* ECF 1, ¶ 8.

specific states exist in which it would be subject to suit." *Motus*, 23 F.4th at 127 (quotation marks omitted). Valnet produced no such evidence, even though it was granted leave to file a reply brief. Saul has therefore satisfied the second element.

The third element asks whether personal jurisdiction comports with the Due Process Clause of the Fifth Amendment. *Plixer Int'l*, 905 F.3d at 6. Under First Circuit precedent, this "Clause requires 'the plaintiff to show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state.'" *Sec. & Exch. Comm'n v. Gastauer*, 93 F.4th 1, 8 (1st Cir. 2024) (quoting *id.* at 7). The Supreme Court recently held in *Fuld v. Palestine Liberation Organization*, however, that "the Due Process Clause of the Fifth Amendment does not incorporate the Fourteenth Amendment minimum contacts standard" and instead "permits a more flexible jurisdictional inquiry" that may require courts to consider "'the reasonableness of the assertion of jurisdiction in the particular case.'" 606 U.S. 1, 16, 23 (2025) (quoting *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 115 (1987)). While *Fuld* involved Federal Rule of Civil Procedure 4(k)(1)(C) and a federal statute that authorizes personal jurisdiction, some courts have questioned whether *Fuld* also applies when, as here, Rule 4(k)(2) is invoked. *See Enhanced US LLC v. World Aquatics*, No. 25-cv-7096-JMF, 2025 WL 3206662, at *5 n.3 (S.D.N.Y. Nov. 17, 2025) (collecting cases). Here, the Court need not decide that issue, because if Saul satisfies the First Circuit's nationwide minimum-contacts standard, then he necessarily meets the less stringent test from *Fuld*. *See King v. Bon Charge*, 823 F. Supp. 3d 508, 517-18 (D. Del. 2025).

"Due process dictates that a court may only assert its power over an out-of-forum defendant if the party has 'such contacts with the forum . . . that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair

play and substantial justice.'" *Gastauer*, 93 F.4th at 8 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). The due process inquiry "has long focused on the nature and extent of the defendant's relationship to the forum State." *Ford Motor*, 592 U.S. at 358 (quotation marks omitted). The exercise of jurisdiction over Valnet satisfies due process if Saul can "show that (1) [his] claim directly arises out of or relates to [Valnet's] forum activities; (2) [Valnet's] forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering [Valnet's] involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable." *Plixer Int'l*, 905 F.3d at 7. "This test is flexible and fact-specific, written more in shades of grey than in black and white." *Rosenthal*, 101 F.4th at 95 (quotation marks omitted).

### A.    Relatedness.

To demonstrate relatedness, Saul "must show a nexus between his claim and [Valnet's] forum-based activities." *Cappello v. Rest. Depot, LLC*, 89 F.4th 238, 245 (1st Cir. 2023) (quotation marks omitted). Valnet contends that its only connection to the United States stems from Saul's unilateral activities. But according to the complaint, Valnet did not merely make gamerant.com available in the United States. *See Plixer*, 905 F.3d at 10. Instead, Saul alleges, Valnet violated the VPPA by knowingly disclosing his personally identifiable information and video viewing activity to Google without his consent. ECF 1, ¶¶ 2-5, 37-40. Valnet's privacy policy confirms that the company "track[s] and store[s] data about how [users] visit and use [its] Sites," including their name, billing address, and location. ECF 7-5, at 2. Saul's VPPA claim arises out of Valnet's contact with his account on its website, from which it allegedly shared such information. ECF 1, ¶¶ 1-5. This claim also relates to Valnet's contacts in the United States because other users

allegedly suffered the same harm to "their statutorily-protected privacy rights." *Id.* ¶ 8. Because Valnet's disclosure of users' private data forms the basis for Saul's VPPA claim, he has sufficiently established relatedness. *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 760 (9th Cir. 2025) (en banc) (finding relatedness because defendant's "installation of software onto unsuspecting Californians' devices and extracting personal data from them is the kind of contact that would tend to cause privacy injuries"); *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 354 (4th Cir. 2020) (same where defendant "made two globally accessible websites" that it "knew . . . were serving Virginian visitors and yet took no actions to limit or block access").

B.    Purposeful Availment.

To meet the purposeful availment requirement, Saul must identify "some act by which [Valnet] purposefully avail[ed] itself of the privilege of conducting activities within" the United States. *Rosenthal*, 101 F.4th at 96 (quotation marks omitted). The inquiry focuses on the voluntariness of Valnet's actions—that is, whether Valnet's nationwide contacts resulted from its own actions—and the foreseeability that its connection with the United States might cause it to be haled into this country's courts. *See id.* As relevant here, Saul must "sho[w] that [Valnet's] website either specifically targets the forum or has resulted in [its] knowing receipt of substantial revenue from forum residents." *Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 60 (1st Cir. 2020).

Saul alleges that Valnet owns and operates gamerant.com, which is used throughout the United States. ECF 1, ¶¶ 1, 6. Valnet's General Counsel and Vice President of Legal Affairs, Yury Smagorinsky, attests that Valnet derives revenue from that website, which "is generally available on the web, including to users in Massachusetts" and across the country. ECF 7-1, ¶ 3. For example, Massachusetts accounted for approximately 0.3% of Valnet's revenue in 2024 and 0.2%

in 2025. *Id.* Valnet's website also states that 232 million of its 448 million monthly sessions are from users within the United States. ECF 9-1, at 2. Based on this data, Saul posits, and Valnet does not dispute, that Valnet likely receives a majority of its revenue from the United States.

At this early stage, these facts are sufficient to establish that Valnet has purposefully availed itself of the United States market. Valnet's "voluntary service of the U.S. market" for at least the past two years "and its not insubstantial income from that market show that it could have 'reasonably anticipated' being haled into U.S. court." *Plixer*, 905 F.3d at 4-5, 10 (serving 156 customers in the United States and earning almost $200,000 in business over 3.5 years meets the purposeful availment standard). Reflecting its "intent to serve the forum," Valnet "knew that it was serving U.S. customers and took no steps to limit its website's reach or block its use by U.S. customers." *Id.* at 8-9; *see also Stokinger v. Armslist, LLC*, 166 F.4th 229, 239 (1st Cir. 2026) (plaintiff may be able to establish purposeful availment by showing that defendant's website "generate[d] advertising revenue from [forum] users"). Accordingly, Valnet "cannot now claim that its contact with the United States was involuntary," and Saul has satisfied the purposeful availment prong. *Plixer*, 905 F.3d at 9.

C.    Reasonableness.

The final element is whether the exercise of jurisdiction over Valnet would be fair and reasonable. That inquiry requires consideration of the following factors: "(1) the defendant's burden of appearing [in the forum], (2) the [forum's] interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *Id.* at 12 (quotation marks omitted). Courts employ a "sliding scale" approach, with the importance of this multi-factor reasonableness inquiry

8

varying with the strength of the plaintiff's showing on the relatedness and purposeful availment elements. *Baskin-Robbins*, 825 F.3d at 40. Applying these factors serves "to aid the court in achieving substantial justice." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 717 (1st Cir. 1996).

On balance, the factors favor exercising personal jurisdiction over Valnet. First, as a Canadian corporation, Valnet bears a "significant burden" in being subjected to "a foreign legal system." *Plixer*, 905 F.3d at 12. That burden is diminished, however, by Valnet's "substantial and recurrent business in the U.S." *Id.* The fact that Valnet is based in Canada and has no offices in Massachusetts does not mean that it would otherwise be burdened by litigating in the United States. *See* ECF 7-1, ¶ 2. Because "it is 'almost always inconvenient and costly for a party to litigate in a foreign jurisdiction,'" the First Circuit has recognized that "a defendant 'must demonstrate that exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way.'" *Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 166 (1st Cir. 2022) (quoting *Nowak*, 94 F.3d at 718). Valnet has not made that showing or specified such a unique burden associated with appearing in a contiguous country. *See Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994) (modern travel "creates no especially ponderous burden for business travelers").

Second, "the United States has an interest in adjudicating a dispute over" a federal statute like the VPPA and "in remedying an alleged injury that occur[ed] in the United States." *Plixer*, 905 F.3d at 12; *cf. Fuld*, 606 U.S. at 24 ("American plaintiffs have a strong interest in seeking justice through an [Antiterrorism Act of 1990] damages action in U. S. courts."). Third, some deference is owed to Saul's choice of forum, *see Baskin-Robbins*, 825 F.3d at 41, and Valnet concedes that it would be most convenient for Saul to litigate this matter in his home country, *see* ECF 7, at 16; ECF 1, ¶ 5. Neither party meaningfully addresses the remaining two factors.

Assuming those factors weigh in favor of neither party, subjecting Valnet to litigation in this forum comports with traditional notions of fair play and substantial justice. Because Valnet's burden in appearing before this Court is outweighed by the other factors, the exercise of jurisdiction over Valnet would not offend due process. *See Plixer*, 905 F.3d at 12-13.

## II.    Sufficiency of the VPPA Claim.

Valnet alternatively moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In evaluating such a motion, the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and documents that are part of or incorporated into the complaint." *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted).

Congress enacted the VPPA in 1988 to "'preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials.'" *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 485 (1st Cir. 2016) (quoting S. Rep. No. 100-599, at 1 (1988)). Under the VPPA, a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to

10

the aggrieved person." 18 U.S.C. § 2710(b)(1).[2] The statute contains a pertinent exception that permits such disclosure if the provider obtains "the informed, written consent (including through an electronic means using the Internet) of the consumer." *Id.* § 2710(b)(2)(B). That written consent must be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer" and be either "given at the time the disclosure is sought" or "given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner." *Id.* § 2710(b)(2)(B)(i)-(ii). The video tape service provider must also provide "an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." *Id.* § 2710(b)(2)(B)(iii).

Raising an affirmative defense, Valnet contends that Saul fails to state a claim under the VPPA because he consented to the disclosure of his personally identifiable information by accepting its privacy policy. *See Adams v. Am.'s Test Kitchen, LP*, 680 F. Supp. 3d 31, 43-44 (D. Mass. 2023) (treating consent as an affirmative defense to a VPPA claim); *Hughes v. Nat'l Football League*, No. 24-2656, 2025 WL 1720295, at *1 n.1 (2d Cir. June 20, 2025) (whether plaintiff consented by agreeing to defendant's policies when creating his account "at most establishe[d] an affirmative defense"); *cf. Breda v. Cellco P'ship*, 934 F.3d 1, 5 n.4 (1st Cir. 2019) (consent is an affirmative defense under the Telephone Consumer Protection Act). To grant a motion to dismiss on the basis of an affirmative defense, "the facts establishing the defense [must be] clear from the face of the complaint as supplemented by matters fairly incorporated within it

---

[2] The VPPA defines "personally identifiable information" to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). This term encompasses "information reasonably and foreseeably likely to reveal which . . . videos [a person] has obtained." *Yershov*, 820 F.3d at 486.

and matters susceptible to judicial notice." *Monsarrat v. Newman*, 28 F.4th 314, 318 (1st Cir. 2022) (quotation marks omitted).

Valnet's affirmative defense falters because its privacy policy cannot be considered at the pleading stage. The complaint repeatedly alleges that Saul did not consent, in writing or otherwise, to Valnet's disclosure of his personally identifiable information. ECF 1, ¶¶ 4-5, 40. Valnet relies on those allegations to argue that its privacy policy is incorporated by reference in the complaint. But the mere mention of consent is insufficient to make this policy central to the complaint. And while the complaint contains a screenshot referencing "the *OpenPass* Privacy Policy," it does not refer to *Valnet's* privacy policy at all. *Id.* ¶ 20 (emphasis added); *compare Adams*, 680 F. Supp. 3d at 44 (declining to consider defendants' privacy policies where "a close reading of the complaint reveal[ed] no reference to" them), *and Thornton v. Mindvalley, Inc.*, No. 24-cv-593-EKL, 2025 WL 877714, at *3-5 (N.D. Cal. Feb. 14, 2025) (similar), *with Rodriguez v. ByteDance, Inc.*, No. 23-cv-4953, 2025 WL 672951, at *2 (N.D. Ill. Mar. 3, 2025) (considering policies where the amended complaint "indisputably" referenced them). Accordingly, Valnet's privacy policy cannot be considered in connection with its Rule 12(b)(6) motion, and its affirmative defense of consent must be rejected as a result.

But even if Valnet's privacy policy were subject to consideration, dismissal would still be unwarranted. That is so because the policy cannot be said to leave "no doubt" that Saul's VPPA claim is barred by Valnet's affirmative defense of consent. *Monsarrat*, 28 F.4th at 318 (quotation marks omitted). The policy itself says nothing about whether Saul assented to its terms. Valnet contends that Saul "necessarily consented" to its policy when he created an account on its website. ECF 7, at 3. But that contention relies on facts outside of the complaint, including those referenced in Smagorinsky's declaration, that may not be considered at the pleading stage. *See* ECF 7-1. Here,

12

as the complaint alleges and the Court accepts as true, Saul "did not provide [Valnet] with any form of consent, written or otherwise, to disclose [his personally identifiable information] or video viewing activity to third parties." ECF 1, ¶ 40. Nor does Valnet's privacy policy clearly establish that the requirements of Section 2710(b)(2)(B) have been met. For example, the policy fails to specify when the disclosure of Saul's personally identifiable information occurred. *See* 18 U.S.C. § 2710(b)(2)(B)(ii). The VPPA claim cannot, accordingly, be dismissed. *See Rodriguez*, 2025 WL 672951, at \*3 (denying motion to dismiss VPPA claim where defendant's submitted materials did not "conclusively establish . . . when and how plaintiffs agreed to th[e] terms in [its] Privacy Policies"); *Nguyen v. Elsevier Inc.*, No. 25-cv-825-NC, 2025 WL 2901059, at \*3 (N.D. Cal. Oct. 7, 2025) (similar and collecting cases); *Garcia v. Bandai Namco Ent. Am. Inc.*, No. 25-cv-967-DOC-PVC, 2025 WL 2451033, at \*9 (C.D. Cal. Aug. 7, 2025) (same).

## CONCLUSION AND ORDER

For the foregoing reasons, Valnet's motion to dismiss the complaint, ECF 5, is DENIED.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: June 30, 2026

13