**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JONATHAN SAUL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VALNET INC.,<br><br>Defendant. | Case No. 1:25-cv-12236-JEK<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jonathan Saul ("Plaintiff"), individually and on behalf of all other persons similarly situated, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit brought on behalf of all persons who have an account on gamerant.com (the "Website"), a website owned and operated by Defendant Valnet Inc. ("Valnet" or "Defendant").

2. Plaintiff brings this action in response to Defendant's practice of knowingly disclosing its users' personally identifiable information ("PII") and video viewing activity to Google without their consent.

3. Specifically, the Website uses code for Google Tag and Google Analytics to track what videos its users watch, and to then send that data to Google along with their PII.

4. The sharing of that data without the consent of Plaintiff or other consumers constitutes a violation of the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* ("VPPA").

**PARTIES**

5. Plaintiff Jonathan Saul is, and has been at all relevant times, a resident of Natick, Massachusetts and has an intent to remain there, and is therefore a domiciliary of Massachusetts. Plaintiff has had a Google account since at least 2019. When he created that account, he provided Google with his PII, including his name, birthday, gender, phone number, home address and email address. Plaintiff has had an account on the Website since approximately November 2024. Plaintiff received the Game Rant email newsletter from approximately November 2024 to December 2024. During the relevant statute of limitations, he has viewed numerous videos on the Website, both before and after he created an account on the Website. Unbeknownst to Plaintiff, and without his consent, Defendant shared Plaintiff's video watching activity and his PII with Google through its use of Google Tag and Google Analytics.

6. Defendant Valnet Inc. is a Canadian corporation headquartered at 7405 Rte Transcanadienne #100, Saint-Laurent, QC H4T 1Z2, Canada. Defendant owns and operates gamerant.com, which is used throughout Massachusetts and the United States.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States.

8. This Court has personal jurisdiction over Defendant because Defendant used and disseminated data derived directly from Massachusetts-based users. In light of the scope and magnitude of Defendant's conduct, Defendant knew that the disclosure of its users' PII and video viewing activity would injure Massachusetts residents and citizens, deprive them of their statutorily-protected privacy rights, and neutralize Massachusetts citizens' and residents' ability to control access to their PII and video-viewing information via their Massachusetts-managed

devices.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

### I. The VPPA

10. The genesis of the VPPA was President Ronald Reagan's nomination of Judge Robert Bork to the United States Supreme Court. During the confirmation process, a movie rental store disclosed Bork's rental history to the Washington City Paper, which then published it. Congress responded by passing the VPPA, with an eye toward the digital future. As Senator Patrick Leahy, who introduced the Act, explained:

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. In an area of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone. I think that is wrong.

S. Rep. 100-599, at 5-6 (internal ellipses and brackets omitted).

11. The VPPA prohibits "[a] video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).

12. The VPPA defines personally identifiable information as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3).

13. A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette

tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

## II. Google Tag and Google Analytics

14. One of the many services that Google offers is called "Google Tag." "The Google tag (gtag.js) is a single tag you can add to your website that allows you to use a variety of Google products and services."[1] "The Google tag lets you send data from your website to linked Google product destinations," to help you measure the effectiveness of your website and ads."[2] "A destination is a Google measurement product account that shares configuration with, and receives data from, a Google tag."[3] Available destinations include trackers such as Google Analytics and Google Ads.[4]

15. As Google explains, "having high-quality, site-wide tagging across your website is important to help ensure you're getting the most accurate measurement."[5] Accordingly, "[t]he Google tag lets you . . . "[a]utomatically measure page views, clicks, scrolls, and more in Google Analytics" and "[a]utomatically measure conversions and campaign performance in Google Ads."[6]

16. Likewise, "Google Analytics is a platform that collects data from [] websites and apps to create reports that provide insights" for businesses.[7] This is made possible by the Google Analytics code which, when installed on a website, collects information on what users do on that website, including the specific URLs that they visit and associated metadata. This information is

---

[1] GOOGLE, ABOUT THE GOOGLE TAG, https://support.google.com/tagmanager/answer/11994839?hl=en.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] GOOGLE, HOW GOOGLE ANALYTICS WORKS, https://support.google.com/analytics/answer/12159447?hl=en&ref_topic=14089939&sjid=2827624563183915220-NC.

known as "Event Data." The Event Data collected on a website through the Google Tag and Google Analytics is sent to Google.

17. Simultaneously, websites hosting the Google Tag and/or Google Analytics send Google information from various Google cookies, including the Google SID cookie and the Google HSID cookie which "contain digitally signed and encrypted records of a user's Google Account ID."[8] A Google Account ID is linked to all of the personally identifiable information that Google collects on users across its various platforms, including their name and email address.[9] Google acknowledges that it uses cookies "for analytical purposes to understand how you interact with a particular service," "to measure audience engagement," and "to show personalized ads."[10]

18. Once this data is sent to Google's servers, Google combines the Event Data and PII to create profiles for each user. Google seeks to associate as much information as possible with each profile because, by doing so, it can profit from its ad-targeting services. Among other things, these profiles permit Google to view who watched what videos on a website hosting the Google Tag and/or Google Analytics.

## III. Game Rant and The Google Tag/Google Analytics

19. Defendant's website gamerant.com is one of the most popular gaming news websites in the world. "Game Rant offers unique videos that cover a wide range of topics in video games. Whether it be list posts highlighting the best games in the world, guides that help

---

[8] GOOGLE, HOW GOOGLE USES COOKIES, https://policies.google.com/technologies/cookies?hl=en-US.
[9] GOOGLE, GOOGLE PRIVACY POLICY, https://policies.google.com/privacy?hl=en#infocollect/.
[10] GOOGLE, HOW GOOGLE USES COOKIES, https://policies.google.com/technologies/cookies?hl=en-US.

gamers beat hard bosses, or reviews of the latest releases, Game Rant is your one-stop shop."[11]

20. In the top right of every page on the Website, Defendant encourages it users to "Sign In Now."




In then instructs users to "Log in" and "Create an account" on the Website so that they have "Unlimited Access" to "All Features" and get the "Full Experience!"




21. In exchange for the benefits of "Unlimited Access," users must provide their email address or Google account. Through this subscription process, users also necessarily provide Defendant with their IP addresses and cookies associated with their devices, which disclose the users' locations. These tools increase Defendant's potential to urge accountholders to visit gamerant.com and watch videos on it, making Defendant's relationship with them distinct from its relationship with other casual video-watchers on gamerant.com.

22. Each of the Website's pages hosting videos contains code for the Google Tag and Google Analytics.

23. Among other things, the code for the Google Tag and Google Analytics on

[11] GAME RANT, LATEST VIDEOS, https://gamerant.com/latest-videos/.

gamerant.com is configured to transmit Page View data to Google, which includes the URL for each video page. The URLs for all of the webpages on gamerant.com are descriptive in that they note whether the page contains a video and the name of that video. For instance, a page on gamerant.com hosting a video about the game "Mafia: The Old Country" entitled "Mafia: The Old Country Stays True to Its Roots, For Better or Worse" has the URL https://gamerant.com/video/mafia-the-old-country-stays-true-to-its-roots-for-better-or-worse/.

24. In addition to the URL itself, the code for the Google Tag and Google Analytics on each page of gamerant.com tracks various pieces of metadata, including whether that page hosts a video, the title of the video and the user's IP address. These items can be seen using a tool published by Google called Tag Assistant, excerpted below:




25. In addition, the Website contains code for at least 23 different third-party cookies from Google and DoubleClick (which is also owned by Google):

| Name | Value | Domain |
|---|---|---|
| DV | gyrdg0MCfO9mUOIrRFLHL... | www.google.com |
| OTZ | 8203462_72_76_104100_72... | www.google.com |
| __Secure-1PAPISID | op_YK1lmqPjTnHFV/AFmg4... | .google.com |
| __Secure-1PSID | g.a000zwgTUBzBRkQv3YyL... | .google.com |
| __Secure-1PSIDCC | AKEyXzUzBxVMJ-XZejJUH-... | .google.com |
| __Secure-1PSIDTS | sidts-CjEB5H03P7LrnTjiO_s... | .google.com |
| __Secure-3PAPISID | op_YK1lmqPjTnHFV/AFmg4... | .google.com |
| __Secure-3PSID | g.a000zwgTUBzBRkQv3YyL... | .google.com |
| __Secure-3PSIDCC | AKEyXzV-qt_QKFbaNlk_4jf6... | .google.com |
| __Secure-3PSIDTS | sidts-CjEB5H03P7LrnTjiO_s... | .google.com |
| AEC | AVh_V2jlwhuMWJ8bjAAeg... | .google.com |
| APISID | kFf-EwR3YspfBjYC/AyUq7Jn... | .google.com |
| HSID | ADsxopqNtdegcQri- | .google.com |
| NID | 525=Q1SfwUbD36A2VwgV... | .google.com |
| SAPISID | op_YK1lmqPjTnHFV/AFmg4... | .google.com |
| SEARCH_SAMESITE | CgQI0Z4B | .google.com |
| SID | g.a000zwgTUBzBRkQv3YyL... | .google.com |
| SIDCC | AKEyXzU6uj-ttLgQEzFPfbgJ... | .google.com |
| SSID | Ayxk_AotjMW9q3w4t | .google.com |

| Name | Value | Domain |
|---|---|---|
| ar_debug | 1 | .doubleclick.net |
| DSID | AJ0u58s-0JOCGKf... | .doubleclick.net |
| IDE | AHWqTUI-SxPkHV... | .doubleclick.net |
| receive-cookie-deprecation | 1 | .doubleclick.net |

26. As discussed above, the SID and HSID cookies "contain digitally signed and encrypted records of a user's Google Account ID."

27. The Event Data and PII that Defendant shares with Google through its use of the Google Tag, Google Analytics and Google cookies permits Google to identify what videos an individual has requested or obtained on the Website.

## CLASS ALLEGATIONS

28. **Class Definition:** Plaintiff seeks to represent a class of similarly situated individuals defined as all persons in the United States with a gamerant.com account (the "Class"). Subject to additional information obtained through further investigation and discovery,

the above-described Class may be modified or narrowed as appropriate.

29. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiff does not know the exact number of members of the aforementioned Class. However, given the popularity of Defendant's Website, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

30. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

(a) whether Defendant collected Plaintiff's and the Class's PII and video viewing activity;

(b) whether Defendant unlawfully disclosed and continues to disclose its users' PII and video viewing activity in violation of the VPPA;

(c) whether Defendant's made these disclosures knowingly; and

(d) whether Defendant disclosed Plaintiff's and the Class's PII and video viewing activity without their consent.

31. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, used Defendant's website to watch videos, and had his PII and video viewing activity collected and disclosed by Defendant.

32. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff has retained and is represented by qualified and competent counsel who is highly experienced in complex consumer class action litigation, including litigation concerning the VPPA. Plaintiff and his counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to fairly and adequately represent and protect the interests of the Class. Neither Plaintiff nor his counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiff has

raised viable statutory claims or the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this First Amended Class Action Complaint to include additional representatives to represent the Class, additional claims as may be appropriate, or to amend the definition of the Class to address any steps that Defendant took.

33. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### COUNT I
### Violation of the Video Privacy Protection Act
### 18 U.S.C. § 2710, *et seq.*

34. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

35. Defendant is a "video tape service provider" because it has created, hosted, and

delivered many videos on the Website, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

36. Plaintiff and members of the Class are "consumers" because they subscribed to Defendant's website through their creation of an account. 18 U.S.C. § 2710(a)(1).

37. Defendant disclosed to a third party, Google, Plaintiff's and the Class members' personally identifiable information. Defendant utilized the Google Tag and Google Analytics to compel Plaintiff's web browser to transfer Plaintiff's identifying information, like his Google Account ID, along with Plaintiff's Event Data, including information about the videos he viewed.

38. Plaintiff and Class members viewed videos on Defendant's website.

39. Defendant knowingly disclosed Plaintiff's PII and video viewing activity because it knowingly installed the Google Tag and Google Analytics on the Website.

40. Plaintiff and class members did not provide Defendant with any form of consent, written or otherwise, to disclose their PII or video viewing activity to third parties.

41. Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA. In particular, Defendant's disclosures to Google were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

## COUNT II
## Violation of the Electronic Communications Privacy Act
## 18 U.S.C. § 2501, *et seq.*

42. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

43. Under the ECPA, it is unlawful for a person to intentionally intercept, endeavor to

intercept or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication. 18 U.S.C. § 2511(1)(a).

44. Under the ECPA, it is unlawful for a person to intentionally use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the ECPA. 18 U.S.C. § 2511(1)(d).

45. The ECPA protects both the sending and receipt of communications.

46. Under the ECPA, a "person" includes "any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

47. Under the ECPA, in relevant part, "electronic communication" means:

> any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate commerce or foreign commerce . . . .

18 U.S.C. § 2510(12).

48. Under the ECPA, "'intercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

49. Under the ECPA, in relevant part, "'electronic, mechanical, or other device' means any device or apparatus which can be used to intercept a wire, oral, or electronic communication . . . ." 18 U.S.C. § 2510(5).

50. The following constitute "devices" within the meaning of 18 U.S.C. § 2105(5):

(a) The computer codes and programs for Google Tag and Google Analytics, which were used to intercept, monitor, capture and record the communications and data transmissions of Plaintiff and the members of the Nationwide Class while they were accessing and navigating the Website;

(b) Plaintiff's and members of the Nationwide Class's browsers;

(c) Plaintiff's and members of the Nationwide Class's computing and mobile devices; and

(d) The web servers of Google Tag and Google Analytics that were used to intercept the communications of Plaintiff and members of the Nationwide Class.

51. Under the ECPA, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the ECPA] may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

52. Under the ECPA, the "court may assess as damages whichever is the greater of – (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." 18 U.S.C. § 2520(c)(2). Additional appropriate relief includes: (a) equitable or declaratory relief; (b) punitive damages; and (c) a reasonable attorney's fee and other litigation costs reasonably incurred. 18 U.S.C. § 2520(b).

53. Defendant was, and continues to be, a "person" under the ECPA.

54. In violation of the ECPA, 18 U.S.C. § 2511(1)(a), Defendant intentionally procured Google to intercept the electronic communications of Plaintiff and members of the Nationwide Class, namely the transmissions of their confidential and sensitive information, including their PII and communications regarding the videos they viewed. At relevant times, Defendant knew that by integrating, installing and embedding Google Tag and Google Analytics, Google would intercept the electronic communications of its users.

55. In violation of the ECPA, 18 U.S.C. § 2511(1)(d), Defendant used, or endeavored to use, the contents of the electronic communications of Plaintiff and members of the Nationwide

Class to generate profits and increase revenues by, inter alia, using the intercepted communications to target its users with advertisements, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff and members of the Nationwide Class, in violation of the ECPA, as alleged herein.

56. Defendant knew and had reason to know that it procured Google to intercept the electronic communications at issue and it used the fruits thereof in violation of the ECPA, as Defendant did not obtain the consent of Plaintiff or members of the Nationwide Class to intercept the electronic communications and, as alleged below, did so for criminal and tortious purposes.

57. At the time of the above-described electronic communications, Plaintiff and members of the Nationwide Class exhibited an expectation that the communications were not subject to interception under circumstances justifying such an expectation, as alleged herein.

58. Plaintiff and members of the Nationwide Class did not consent to the interception and/or disclosure of their sensitive and confidential electronic communications via the Website.

59. At the time Defendant intentionally procured Google to intercept and endeavor to intercept the electronic communications of Plaintiff and members of the Nationwide Class, Defendant was not acting under color of law.

60. Defendant procured Google to intercept and endeavor to intercept the electronic communications of Plaintiff and members of the Nationwide Class for the purpose of violating the VPPA, M.G.L. c. 214, § 1B and the privacy rights of Plaintiff and members of the Nationwide Class.

61. Plaintiff and members of the Nationwide Class seek all relief to which they are entitled under the ECPA, including statutory damages, punitive damages, equitable and

declaratory relief and attorneys' fees and costs.

62. Unless and until enjoined and restrained by order of this Court, the wrongful conduct of Defendant will continue to cause great and irreparable injury to Plaintiff and members of the Nationwide Class in that Defendant will continue to engage in the unlawful conduct alleged herein. Plaintiff and members of the Nationwide Class have no adequate remedy at law for their injuries in that a judgment for monetary damages will not end the unlawful conduct of Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks a judgment against Defendant, individually and on behalf of all others similarly situated, as follows:

(a) For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) An award of statutory damages to the extent available;

(e) For prejudgment interest on all amounts awarded;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

Dated: August 26, 2025

**REARDON SCANLON LLP**

By: *___/s/ James J. Reardon, Jr.____*
James J. Reardon, Jr. (BBO# 566161)

James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT 06107
Telephone: (860) 955-9455
Facsimile: (860) 920-5242
E-mail: james.reardon@reardonscanlon.com

**ARISOHN LLC**
Joshua D. Arisohn (*pro hac vice*)
94 Blakeslee Rd.
Litchfield, CT 06759
Telephone: (917) 656-0569
Email: josh@arisohnllc.com

*Attorneys for Plaintiff*

**RULE 7.1 CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), the undersigned conferred with counsel for Defendant by email on August 25-26, 2026 and counsel for Defendant consented to this amendment.

Dated: August 26, 2026

*/s/ James J. Reardon, Jr.*
James J. Reardon, Jr.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2026, I electronically filed the foregoing document(s) using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ James J. Reardon, Jr.*
James J. Reardon, Jr.